.Hoppock's executors *v.* Ramsey.

---

### EXECUTORS OF WILLIAM L. HOPPOCK, deceased,

#### *v.*

### JOHN RAMSEY and others.

1. Where a conveyance of lands was made by a grantor upon the same day that a judgment was recovered against him, and there is no allegation in the pleadings, nor any proof in the cause, to show that the recovery of the judgment preceded the conveyance by a fractional part of a day, or *vice versa*, a master's report that the judgment is entitled to priority, should be sent back for further proofs.

Hoppock's executors *v.* Ramsey.

2. A second mortgage and judgment will not be merged by a subsequent conveyance of the equity of redemption to the holder of them, neither of them being cancelled of record, and such encumbrancer's interest clearly requiring them to be kept alive; nor, is the fact that the expressed consideration of the deed is greater than the amount of the grantee's mortgage and judgment, evidence of any intent to merge; nor, can lienholders intermediate the second mortgage and judgment and such conveyance, set up such merger after decree *pro con.*, there being no such allegation in the bill to foreclose the first mortgage, nor in the answer of a prior judgment creditor.

3. The appearance of a defendant in attachment, under *Rev.* p. 48, ? 38, does not destroy the prior lien acquired on his lands by the attaching creditors.

4. The regularity of attachment proceedings at law, cannot be questioned collaterally in the foreclosure of a mortgage on the premises attached.

On bill to foreclose, and exceptions to master's report, argued before Barker Gummere, esq., a special master, sitting for the chancellor.

*Mr. J. N. Voorhees,* for exceptant,

*Mr. C. A. Skillman,* for complainants.

*Mr. J. T. Bird,* for defendant Baillie.

THE MASTER.

The complainants filed their bill to foreclose a purchase money mortgage upon lands in Hunterdon county, dated April 1st, 1874, and made to their testator by William P. Corney and Lemuel O. Kessler, who owned the mortgaged premises, as tenants in common, in equal shares. It appears in the case, that on October 21st, 1873, the defendant, William A. Baillie, recovered a judgment against William P. Corney in the supreme court of this state; and it appears, and is admitted, that on the same day, William P. Corney conveyed his undivided half of the premises to said Lemuel O. Kessler; after this conveyance, divers judgments at law

were recovered against Kessler by John L. Shoemaker and various other persons; and a mortgage, dated February 11th, 1876, was also given by Kessler and his wife to John Ramsey, and an attachment at law was executed against Kessler's interest in the mortgaged premises in favor of Daniel L. Bodine and a number of applying creditors, all which are reported by the master, and their respective priorities fixed by him; on March 30th, 1876, and after all these judgment, mortgage and attachment liens had been acquired, Kessler and his wife conveyed the equity of redemption in the premises to said John Ramsey; and on April 18th, 1876, John L. Shoemaker assigned his judgment aforesaid to John Ramsey.

The master has reported, among other things, that the judgment recovered by William A. Baillie against Thomas P. Corney, is the second lien upon the mortgaged premises, and superior to the liens of the said judgments recovered against Kessler, and of the mortgage made by Kessler to Ramsey, and entitled to be secondly paid out of the proceeds of sale of the premises. The defendant, Ramsey, has filed exceptions to the report, and the first exception is to the lien and priority thus awarded by the master to the Baillie judgment, and the exceptant insists that the judgment is not a lien upon the premises. This judgment was recovered against Thomas P. Corney on October 21st, 1873, and on the same day Thomas P. Corney conveyed his undivided share in the premises to Lemuel O. Kessler. There is no averment in any of the pleadings, nor any proof in the cause, that the recovery preceded the conveyance by a fractional part of the day, nor that the conveyance preceded the recovery; the only averment upon the subject, is that of Baillie's answer, to wit: that this judgment is a prior lien to all the other judgments mentioned in the bill; but this is a statement of a legal conclusion, not of a fact; a day, in law, being generally regarded as merely a point of time. All that appears, *prima facie*, from the pleadings and proofs, is that the transactions were simultaneous. And although Kessler appears to hold the position of a *bona fide* purchaser

without. notice of the judgment, and in a strictly technical view the *onus* may be said to be cast upon Baillie, who is not such purchaser, to demonstrate his equitable priority, and that not having done so, his case has failed, yet, as the proceedings before the master in such cases are usually somewhat informal, and in this case evidently so, I do not think so strict a rule should be applied, but the matter should be considered as having come up on incomplete proofs, and should be sent back to the master that the parties may adduce further proofs. The report is certainly not sustained by the proofs, and it is clear, that even if the judgment be a lien, it covers only the undivided half of the equity of redemption, and not the whole, as the master has reported. I therefore advise, that an order be made setting aside the master's report as to the lien and priority of the judgment, and referring it back to the master for further proofs as to whether the judgment was, in fact, recovered before the deed was delivered.

The master has also reported that the mortgage made by Kessler and wife to John Ramsey, on February 11th, 1876, merged and became extinguished by the conveyance of the equity of redemption of the mortgaged premises by Kessler and wife to John Ramsey, on April 18th, 1876; and he has also reported, that the judgment recovered by John L. Shoemaker against Kessler, on August 1st, 1875, merged, and was extinguished upon the assignment thereof, on April 18th, 1876, to Ramsey, who then held the title to the equity of redemption. To these conclusions Ramsey has excepted by the second and third exceptions. There is no averment of such merger and extinguishment in the bill; but, on the contrary, the judgment and mortgage are stated as existing liens; nor is there any such averment in the answer of Baillie, but, on the contrary, it is averred therein that the conveyance from Kessler to Ramsey, although in form an absolute conveyance, was in fact a mortgage. Nor is there any proof of any intent on the part of Ramsey to merge and extinguish his mortgage and judgment, other than the

Hoppock's executors *v.* Ramsey.

fact that the conveyance was made to him for an expressed consideration greater than the amount due on the mortgage and judgment. It is doubtful, I think, whether, after a decree *pro confesso*, and upon the uncontradicted averments of the bill and answer, (which, in a foreclosure suit, is treated in this state as a quasi cross-bill as to. co-defendants,) the question of merger of these liens was open, at all events. I am clearly of opinion that the fact that the expressed consideration of the deed was greater than the mortgage and judgment debts, is no evidence of any intent on the part of Ramsey to merge and extinguish the mortgage and judgment; at the most, it is merely proof that the transaction evidenced by the deed of March 30th, 1876, was an absolute conveyance, and not a mortgage. The mortgage and judgment were uncancelled of record, and the presumption from such non-cancellation is, that Ramsey intended to keep them alive; and this presumption is strengthened by the fact that it was clearly his interest so to do. The unity of ownership of two or more estates in the same land, in the same person, although it occasions merger, does not necessarily destroy either estate, even by the technical rules of common law; and so little is merger favored at law, that nothing will work it except the intention of the owner expressly declared, or manifestly implied from such merger being to his interest; and the payment of a mortgage or judgment by the owner of the equity or redemption, not being the mortgagor or judgment creditor, will not, as against a title acquired, intermediate the taking of such mortgage or the recovery of such judgment, and the conveyance of the equity of redemption, merge or extinguish such mortgage or judgment. *Duncan* v. *Smith,* 2 *Vr.* 325; *Mulford* v. *Peterson,* 6 *Vr.* 127. In equity the rule is also clearly established, that in such a case the mortgage or judgment will be kept alive, and such will be deemed to be the intent of the owner, if his interest demands it. *Clos* v. *Boppe,* 8 *C. E. Gr.* 270; *Parker* v. *Child,* 10 *C. E. Gr.* 41, and the cases there cited.

In this case the liens of the defendants setting up the

merger were acquired between the recovery of the judgment and making of the mortgage, and the conveyance of the equity of redemption; the interest of Ramsey required the judgment and mortgage to be kept alive; that interest, and his refraining from cancelling them of record, are sufficient evidence of his intent not to merge them, and the conveyance to him did not, in any way, alter the position or prejudice the rights of any other lienor. I am of opinion that the judgment and mortgage were not merged or extinguished, but are valid existing liens, and I advise that an order be made sustaining the second and third exceptions, and setting aside the master's report in the matters therein excepted to, and decreeing the judgment and mortgage in question to be valid liens, and directing them to be paid, with interest, in the order in which their dates entitle them to payment.

The master has also reported, that one Daniel L. Bodine caused an attachment at law to be executed against the title and interest of Kessler in the mortgaged premises, and that the writ was returned on March 25th, 1876; that numerous creditors applied and were admitted by rule of court to prove their claims under said attachment, and did prove them; and that the attachment proceedings subsequently proceeded to judgment; and that the attachment and applying creditors have a concurrent lien for the amount of their respective claims, by virtue of said attachment, upon the mortgaged premises. To the report in this matter, the defendant, Ramsey, excepts by the fourth exception, and insists that the attachment proceedings constitute no lien upon the premises. In support of this exception he states that the defendant, Kessler, appeared to the said attachment suit on March 18th, 1876, and that by the terms of the attachment act (*Rev.* p. 48, § 38), such appearance deprived the plaintiff in attachment of his lien, and prevented the applying creditors from lawfully putting in their claims and acquiring a lien under the attachment. As to the lien of the plaintiff in attachment, it is clear that section thirty-eight does not

Hoppock's executors *v.* Ramsey.

deprive him of it; the direction that the suit should proceed in all respects as if commenced by summons, is prospective and not retroactive; it merely provides for the further conduct of the suit by formal pleadings, issue and trial, and does not, in terms, or by implication, invalidate the issue and execution of the writ of attachment, nor impair any lien acquired under it prior to the appearance. As to the applying creditors, the objection is purely that the proceedings at law in their behalf were irregular; but the creditors were admitted by rule of court, and the proceedings have ripened to judgment, and the rights and liens of the applying creditors must be deemed to have been formally adjudged by the court of law. The regularity of the proceedings in attachment is not questioned by the pleadings in this cause, nor, indeed, could they be collaterally brought in question in this suit. Ramsey must seek his redress for the alleged irregularity, in the court of law.

I shall advise an order overruling the fourth exception and sustaining the master's report in the matter therein excepted to.