JOHN T. BIRD, HENRY C. PITNEY, JOHN R. EMERY AND
ALFRED REED, VICE-CHANCELLORS.

———

EVELINE VERONA SMITH, EUGENE V. SMITH, ELLA A.
FULLER and ELTON A. SMITH

*v.*

ANDREW J. SMITH et al.

A testator devised and bequeathed the residue of his estate to nine persons, whom he styled a board of trustees, and, after providing for the perpetuation of such board, for a president thereof and succession in the office of president and for the president's compensation, duties and powers, and for restrictions upon the action of the board of trustees, he added this language: "The property and estate herein bequeathed is to be held in trust by the said board of

(1)

---

Smith *v.* Smith.

---

trustees for the following object, namely : I desire that my entire estate with the accumulations shall be used in establishing and conducting a school for apprentices and young mechanics on plans to be hereafter described by me, or in case of my death before perfecting said plans, the school above named is to be conducted on plans which I have from time to time described to most of the board of trustees herein named and who shall approve of final practical plans in keeping therewith." The testator did not perfect or prescribe plans for the school after the will was made, but prior thereto, in conversations, at various times, with the several trustees, he had communicated to them fragmentary, crude and general ideas with reference to the school he intended. Upon the validity of the trust being questioned by the widow and children of the testator, who constitute his next of kin and heirs-at-law—*Held*, (*a*) that the expressed intention of the testator was to qualify the character of the school by plans made by himself, and that he did not contemplate the establishment of a school otherwise than as controlled by his plans; (*b*) that because of the statute (*Rev. p. 1247 § 22*), which requires that a will of the character of the one in question, shall be in writing, signed by the testator and attested by two witnesses, the reference by the testator to the verbal communications made by him to the trustees will not incorporate those communications in his testamentary disposition; and (*c*) that, as the trust was for a school of restricted or qualified character and the restriction or qualification does not appear, the trust is not defined and cannot be executed against the heirs-at-law and next of kin, and therefore the legal estate will be decreed to be held for them.

---

On bill, answer, replication and proofs.

The object of this bill is to question the validity of the trust proposed in the will of Hezekiah B. Smith, deceased. The will is as follows :

"In the name of God, amen : I, Hezekiah B. Smith, of Smithville, Burlington county, New Jersey, being of sound mind, memory and understanding, do make and publish this my last will and testament in manner following, that is to say :

"After payment of my just debts and charges, I devise and bequeath all of my property—personal and real, to a Board of Trustees, to be composed as follows, namely : Edward F. Burns, Joseph J. White, Bradford W. Storey, George A. Lippincott, Charles H. Chickering, and George D. Field, all of whom are stockholders in the H. B. Smith Machine Company, of Smithville, New Jersey, Andrew J. Smith, of Hightstown, New Jersey, and Eayre O. Lippincott and Benjamin F. Crozier, of Smithville, Burlington County, New Jersey, being nine in all; and in case of the resignation or death of any of the said Board of Trustees, the vacancy shall be filled by a vote of the remaining Board, and preferably, with shareholders of The H. B. Smith Machine Company, that the mutual interests now established may continue.

Smith *v.* Smith.

" I hereby constitute and appoint Andrew J. Smith, President of the Board of Trustees, and he shall receive a fair compensation or salary for actual services performed, the amount to be determined by the said Board of Trustees; and in case of the resignation or death of the President, his successor in office is to be elected by the remaining members of the Board of Trustees.

" The President of the Board shall be expected to give sufficient time to carry out the objects of my will, and he shall receive his authority from a two-thirds majority of said Board of Trustees.   In all cases involving the sale or purchase of property, and in the expenditure of money, it shall be done only with the assent of a two-thirds majority of the said Board of Trustees; therefore four dissenting voices in said Board would prevent the disposition or expenditure of property or the prosecution of plans not endorsed by at least six of the said Board of Trustees.

" The property and estate herein bequeathed is to be held in trust by the said Board of Trustees for the following object, namely : I desire that my entire estate with its accumulations shall be used in establishing and conducting a School for Apprentices and Young Mechanics on plans to be hereafter described by me; or in case of my death before perfecting said plans, the school above named is to be conducted on plans which I have from time to time described to most of the Board of Trustees herein named and who shall approve of final practical plans in keeping therewith.

"And I do hereby constitute the members of the Board of Trustees aforesaid, executors of this my last will and testament.

" In witness whereof" &c.

The complainants are the widow and children of the testator, and the defendants are the nine persons named in the will as trustees and executors.

The testator died at Smithville, in Burlington county, seized and possessed of property worth in the neighborhood of half a million dollars, a large portion of which is represented by a controlling interest in the stock of the H. B. Smith Machine Company, a corporation engaged, as its name indicates, in the manufacture of machinery.   He died without having, by testamentary or other instrument, described perfected plans for the school proposed by his will, but in conversations at various times with the several executors or trustees, before his death, he to some extent indicated crude general ideas with reference to the school. The defendants have collected, and stated in the form of a minute, his fragmentary communications to one or the other of them from time to time, which minute, for present purposes, serves to epitomize that which their testimony is claimed to have estab-

lished as the substance of his conception of the character of the proposed school communicated to them. The minute is this:

"*First.* Admit hard-handed country boys, accustomed to labor. Let them work in the shops ten hours a day and attend school evenings for two years. Then give them one year of instruction in practical English branches, such as would be useful to mechanics. Give them an opportunity to devote their entire time to study during a third year. The expense of boarding and clothing the young men to be paid by the estate, the clothing being uniform. The school to be located in the village of Smithville, Burlington county, New Jersey, and to be operated in connection with the works of the H. B. Smith Machine Company."

*Mr. Cortlandt Parker, Mr. Samuel H. Grey* and *Mr. Joseph H. Gaskill,* for the complainants.

*Mr. Frederic W. Stevens* and *Mr. Mark R. Sooy,* for the defendants.

THE CHANCELLOR.

The gift in question is expressly made in trust to persons who are not intended to have a beneficial interest in the property. Merely the legal title goes to them, to be held while the beneficial use is enjoyed by others. We now deal with the beneficial interest, and the main question is whether it is sufficiently bestowed to be enforceable. If it is not, it will result to the heirs-at-law and next of kin of the testator, for whom the legal title will be deemed to be held.

The complainants claim that it was the intention of the testator to found a school of limited character, indicated by plans which he should perfect, or, failing in that, which he had described to most of the trustees, to whom he gave the legal title, and that he failed to perfect the plans and had not in point of fact, prior to the execution of the will, definitely conceived them or described them to most of the trustees, and, if it should be held that he had described them to most of the trustees, such description being testamentary in character and unattended by the formalities required by statute to validate a will, could not be incorporated in a will by mere reference. And they further contend

that if the description of the plans to the trustees be considered, it does not show that a public charity was intended, and is too vague and indefinite to be executed.

Upon the other hand, the defendants insist that the purpose of the testator was to establish a school for apprentices and young mechanics, and that the reference to plans upon which the school was to be conducted was a matter of administrative detail subordinate to and independent of the creation of the charity intended. They also insist that the plans were *in esse* when the will was made, and were properly incorporated in the will by reference to them, and may be proved. And upon these insistments, they contend that the use contemplated is definitely ascertained and is purely a charitable one, and hence is not invalidated by any indefiniteness in the will as to the individual recipients of the bounty; that the class of recipients is clearly defined, and trustees are provided for and are empowered to establish and conduct the school, and impliedly are clothed with authority to select from the class indicated the individuals who are to benefit from the charity.

It is apparent from this statement of the attitude of the parties, that the first question presented, is, whether the intention of the testator was to qualify the character of the school by a restrictive scheme so that unless it should be established in compliance with such restriction, it should not exist at all, or whether it was his broad purpose to create a school for apprentices and young mechanics, even though the plans he wished to prescribe for its control, should not be perfected or exist.

This question must be determined from the language of the will. It is impossible to read that instrument without being impressed that the testator intended to prescribe the precise character of the school he meant to found. His disposition to control details is evinced in the particularity of the provisions he makes for a perpetual board of trustees, for the first president of that body and succession to that office, for the compensation of the president and his duties and powers, and for restrictions upon the action of the board of trustees. It is after the exhibition of this disposition that the object of the trust is stated to

be the establishment of a school on plans which he should thereafter perfectly describe, or had theretofore imperfectly described. It was to be a school on his plans. The trustees, so far as plans for the school were concerned, were limited in the exercise of their discretion to the approval of practical plans which should accord with the imperfect plans or scheme for a school which he had disclosed to them. He did not mean that they should originate plans—the ideas were to be his—they were merely to execute them.

It appears to me to be plain that though his plans or scheme were intended to have reference largely to matters of administrative detail, they were nevertheless meant by him to be an essential limitation of his gift.

The will itself does not disclose what the plans were to be, but refers to statements made by him before its execution which were susceptible of ascertainment.

Then, the next question which arises is, whether such a reference in a will is unlawful under our statute (*Rev. p. 1247 § 22*), which requires the will to be in writing, signed by the testator and attested by two witnesses. The question is not whether that which has existence for other purposes than the scheme of the will may be adopted as by reference, as, for instance, the plans upon which Princeton, Yale or Harvard universities are conducted, or to previously-pronounced religious or other doctrines, *Attorney-General* v. *Lawes, 8 Hare 32; Sowers* v. *Cyrenius, 39 Ohio 29; Attorney-General* v. *Molland, Younge 562; Potter* v. *Thornton, 7 R. I. 252; Marsh* v. *Means, 3 Jur. (N. S.) 790,* to recognized schemes for distribution of moneys in charity, *Derby* v. *Derby, 4 R. I. 414; Decamp* v. *Dobbins, 4 Stew. Eq. 671,* but whether the testator, by mere reference to his own language, used to others at previous times, concerning that which was not existing, but was to take life in his will, may, as against his heirs and next of kin, make that language operative in the testamentary disposition of his property.

In the case of *Olliffe* v. *Wells, 130 Mass. 221,* a testatrix devised the residue of her estate to A,

"to distribute the same in such manner as in his discretion shall appear bes calculated to carry out wishes which I have expressed to him or may express to him,"

and it could be proved that those wishes required distribution to recognized public charities. Chief-Justice Gray, in writing the opinion of the court, after saying that, in any view of the authorities, it was quite clear that intentions not formed by the testatrix and communicated to A after the making of the will, could not have any effect against her next of kin, and that if the wishes of the testatrix expressed to A were formed and expressed before the execution of the will, the result must be the same, added this language :

"It has been held in England, and in other states, that if a person procures an absolute devise or bequest to himself by orally promising the testator that he will convey the property to or hold it for the benefit of third persons, and afterwards refuses to perform his promise, a trust arises out of the confidence reposed in him by the testator, and of his own fraud, which a court of equity will, upon clear and satisfactory proof of the facts, enforce against him at the suit of such third persons. Upon like grounds, it has been held in England that if a testator devises or bequeaths property to his executors upon trust, not defined in the will, but which, as he states in the will, he has communicated to them before its execution, such trusts, if for lawful purposes, may be proved by the admission of the executors, or by oral evidence, and enforced against them. And in two or three comparatively recent cases it has been held that such trusts may be enforced against the heirs or next of kin of the testator, as well as against the devisee. But these cases appear to us to have overlooked or disregarded a fundamental distinction that where a trust not declared in the will is established by a court of chancery against the devisee, it is by reason of the obligation resting upon the conscience of the devisee, and not as a valid testamentary disposition by the deceased. Where the bequest is outright upon its face, the setting up of a trust, while it diminishes the right of the devisee, does not impair any right of the heirs or next of kin in any aspect of the case; for

if the trust were not set up, the whole property would go to the devisee by force of the devise; if the trust set up is a lawful one, it enures to the benefit of the *cestui que trust;* and if the trust set up is unlawful, the heirs or next of kin take by way of resulting trust. Where the bequest is declared upon its face to be upon such trusts as the testator has otherwise signified to the devisee, it is equally clear that the devisee takes no beneficial interest; and, as between him and the beneficiaries intended, there is as much ground for establishing the trust as if the bequest to him were absolute on its face. But as between the devisee and the heirs or next of kin, the case stands differently. They are not excluded by the will itself. The will, upon its face, showing that the devisee takes the legal title only, and not the beneficial interest, and the trust not being sufficiently defined by the will to take effect, the equitable interest goes, by way of resulting trust, to the heirs or next of kin, as property of the deceased not disposed of by his will. They cannot be deprived of that equitable interest, which accrues to them directly from the deceased, by any conduct of the devisee; nor by any intention of the deceased, unless signified in those forms which the law makes essential to every testamentary disposition. A trust not sufficiently declared on the face of the will cannot therefore be set up by extrinsic evidence to defeat the rights of the heirs-at-law or next of kin. By the statutes of the commonwealth, no will shall be effectual to pass any estate, whether real or personal, nor to change it, or in any way affect the same, unless signed by the testator and attested by three witnesses."

It is urged against the application of this reasoning to the present case, that in *Olliffe* v. *Wells* the will did not, upon its face, make it appear that the trust was intended to be charitable, and therefore a favorite of a court of equity, which will be sustained if possible.

The complainants dispute the assumption, implied in this proposition, that a charitable intent appears by the language of the will in question. The purpose stated, they urge, is the establishment of a school of undisclosed character for apprentices and young mechanics, to have some connection with the

H. B. Smith Machine Company, as is indicated by the require-
ment that the stockholders of that company were preferably to
be trustees of the school, "that the mutual interests now estab-
lished may continue," and they pertinently inquire whether it
may not as well be assumed that its object is the procuration of
the services of apprentices and young mechanics for that com-
pany, as that its object is a charitable disposition to educate that
class of persons.

But if we assume that the defendants' proposition is correct
in fact, is it sound in law? Suppose a purpose to create a charity
appears—not generally, but of a limited and special character—
and the will fails to disclose the limitation, can this court, in
defiance of the plain requirement of the statute that the will shall
be in writing, add to it verbal expressions of the testator which
will supply and define the limitation? And is the case made
stronger by the testator's direction that the reference shall be
had to these expressions?

I do not perceive any reason which will justify such action.
In favor of a charity clearly indicated, the court will so interpret
general terms of description in the will creating it as to render
the plain purpose capable of enforcement; but where the will
fails to indicate what the purpose is, the court will not disre-
gard a statute to supply that which the will omits.

My conclusions determine the case at this point, and it is
unnecessary for me to deal with other questions elaborately and
ably argued by counsel on both sides.

Here is a trust for a purpose which the testator has failed,
legally at least, to define. The court cannot ascertain the pur-
pose, and therefore it cannot execute the trust.

It will be decreed that the legal title is held for the heirs-at-
law and next of kin of the testator.