OTTO MAGNUS, executor,

*v.*

HARRY C. MAGNUS et al.

[Decided September 30th, 1912.]

1. That matter may be part of a will by references thereto in the will, it must be a writing, must be in existence at the time of the execution of the will, and must be referred to with certainty; so that a provision of a will giving property to one to dispose of in accordance with "my instructions to her" is insufficient.

2. A bequest of property to one "to dispose of in accordance with my instructions to her" fails; such reference not identifying the instructions.

---

*Mr. Edward M. Colie*, for the executor.

*Mr. Edward Dudley*, for Julius Partz and others.

*Messrs. Pitney, Hardin & Skinner,* for Herbert L. Richards and others.

*Mr. J. H. Thayer Martin,* for Frank C. Logo.

*Mr. Gilbert Collins,* for Clara Seidensticker.

STEVENS, V. C.

This is a bill for the construction of the will of Clara L. Dotger. The controversy hinges on the effect of its third paragraph, which reads as follows:

"Third. In the event that my personal estate shall be insufficient to pay the legacies above named, in full, then I order and direct that the said legacies shall abate proportionately and in the event that there is a residue after the payment of expenses, taxes and all charges against my estate, I give the same to my niece Clara Seidensticker to dispose of. in accordance with my instructions to her. I also give and devise to my said niece Clara Seidensticker the house and lot in which I now reside known as No. 65 Montrose Ave. as long as she and her mother live and after their deaths, I give and devise the said house * * * unto my niece Elsa Norton."

After the death of Clara L. Dotger there was found in a drawer of her bureau an envelope addressed in her handwriting to Clara Seidensticker, in which was contained a paper in the same handwriting, reading as follows:

"MONTROSE, SOUTH ORANGE, N. J.

"DEAR CLARA—So long as I was changing the will I thought I would shorten it and tell you what to do. I want you to dispose of the most of my books to friends. The house is for you and your mother as long as you live and then to go to Elsa Norton. I want Claire to have my best pin, pearls and diamonds when she is twenty-five years old or if she marries at that time, if she is old enough to value it. ·To Fred Smith I want my set of Shakespeare given and to Wynifred one of my rings or pins. Give Frank one of the rings and Victor books as you wish and to Maud a few books to Mary Steinhauser a picture. The idea was to give you the house and lot but it is hard work for me to divide the things, so I will have to trust it to you to do. The best you know how—You might offer one carriage to Andrew Smith and do with the others as you wish. You need not feel obliged to live in the house, it will rent readily. I trust you implicitly to do the best you can.

"AUNT CLARA.

"August 1909.

"Mrs. King in Brooklyn I would like you to send a check to. It is impossible to mention every one.

"C. L. D.

"I would like Roy to have a thousand dollars and some little keepsake.

"C. L. D."

The testatrix died in August, 1910. The will is dated November 29th, 1909, and so, if the date of its writing is proved by the letter itself, the letter antedates the execution of the will. The question is whether this letter can be taken as part of the will.

In the sixth American edition of *1 Jarm. Wills. *99*, it is said that two things are necessary—

"first, that the will should refer to some document as then in existence; secondly, proof that the document propounded for probate, was in fact written before the will was made, and was identical with that referred to in it."

The will in question reads, "I give the same [my personal estate] to C. S. to dispose of in accordance with my instructions to her." The testatrix does not here limit herself either to written instructions, or to instructions, written or verbal, given before the will was executed. Verbal instructions would satisfy the language used and so would instructions, verbal or written, given subsequently. All the cases require a writing and hold that it must be *in esse* at the time of execution; and they all declare that uncertainty in the reference is fatal. A leading case is *Smart* v. *Prujean, 6 Ves. 560*. There testator, by will duly attested, gave real estate to J. upon trust (*inter alia*) that he should apply the rents unto such persons and for such ends as he, the testator, should, by a private letter, or paper, of instructions, which he in his will mentioned he intended to leave with Mrs. J., then residing at Gravelines, or with her successor, for the time being, direct or appoint. Immediately after testator's death, in his bureau in the room in which he had resided, two paper-writings were found in the same envelope with the will, which envelope was sealed up and endorsed in the hand of the testator, "The Will of Anthony Lowe."

It is apparent that the case cited is stronger for the incorporation of the paper than the case in hand; for the will there expressly mentions a writing, while here the will speaks only of "instructions" which might have been oral. And yet Lord Eldon held the identification incomplete. He says: "There is another ground: not whether the same envelope or superscription is *evidence* that the testator meant these should be the papers referred to, but whether *I must of necessity* collect from the contents of the will that they should be considered the same. The same cover is nothing with reference to the statute, and the superscription has not three witnesses. The true question is, if these papers were found·in the bureau with the will, can I say, from the contents of the will, these two papers are the papers referred to? Suppose several other papers were found with them, could I say this will would have enabled me to select these two as the only papers referred to?"

In all the cases cited by counsel there was a writing, and this writing was referred to in terms sufficient to identify it. Thus, in *Dickinson* v. *Stidolph, 11 C. B. (N. S.) 341,* the language was: "I hereby appoint Mrs. S. J. my sole executrix to this my last will revoking all former wills excepting two memorandums dated 10th May, 1819;" and in *Newton* v. *Seaman's Friends Society, 130 Mass. 91,* "to pay the several legacies according to the directions written in a book by M. signed by me A. D. and witnessed by said M."

It would seem, therefore, that the reference in the will under consideration is insufficient, first, because it fails sufficiently to identify the writing to be incorporated, and second, because by "instructions" the testator does not limit herself either to written instructions or to instructions then given. The language used is broad enough to include future instructions: "wishes, which [to use the terms of the bequest in *Olliffe* v. *Wells, 130 Mass. 221*] I have expressed to him or may express to him." In *Hartwell* v. *Martin, 71 N. J. Eq. (1 Buch.) 157,* the testator directed the payment of his outlawed debts in the following language: "A list of all debts that I wish paid will be found enclosed with this will," and Vice-Chancellor Bergen found this reference inadequate because the paper might have been changed from day to

day after the will was made, and the gifts enlarged or diminished as often as testator might have seen fit to vary them.

Concluding that the paper cannot be read as part of the will, it would be idle to attempt its construction; but this observation upon counsel's argument is pertinent. He first seeks to make the letter part of the will by trying to show that in the absence of other evidence *its contents* are themselves proof that it is the "instructions" referred to. Having thus incorporated it, he then proceeds to argue very elaborately, and not without plausibility, that it contains no instructions, properly so called, but merely recommendations or suggestions which the legatee is not bound to observe; whereupon he argues that she takes the whole residue free from any trust. If this be so, it is demonstrated by the contents of the letter that it is *not* the instructions referred to, unless we are, without any help from the will itself, prepared to give to the word "instructions" the non-natural meaning of recommendations carrying with them no obligation.

I think it is plain that the paper cannot be read as part of the will. If it cannot, then the bequest fails and the next of kin take the residue. *Hartwell* v. *Martin, 71 N. J. Eq. (1 Buch.) 157; Condit* v. *Reynolds, 66 N. J. Law (37 Vr.) 242; Smith* v. *Smith, 54 N. J. Eq. (9 Dick.) 1; 55 N. J. Eq. (10 Dick.) 821.*