38 N.J. Super. 69 (1955)
118 A.2d 108
DOROTHEA J. CLARK, EXECUTRIX UNDER THE WILL OF ERNEST W. CLARK, DECEASED, PLAINTIFF,
v.
CITIZENS NATIONAL BANK OF COLLINGSWOOD, NEW JERSEY, J.E. EDWARDS, CASHIER OF THE GUARANTY BANK AND TRUST COMPANY, BELHAVEN, NORTH CAROLINA, W. ERWIN TILSON, PRINCIPAL OF BELHAVEN HIGH SCHOOL, BELHAVEN, NORTH CAROLINA, AND GROVER C. RICHMAN, JR., ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 28, 1955.
*72 Mr. Howard G. Kulp, Jr., for plaintiff (Messrs. Brown, Connery, Kulp and Wille, attorneys).
Mr. Grover C. Richman, Jr., Attorney-General (Mr. Thomas L. Franklin, Deputy Attorney-General, appearing), attorney for defendants.
HANEMAN, J.S.C.
Plaintiff herein filed a suit seeking the construction of the will of Ernest W. Clark, deceased. In answer thereto, the Attorney-General of the State of New Jersey filed an answer, in which it was stated that it had no knowledge or information sufficient to form a belief as to the allegations of the complaint. The defendant Citizens National Bank of Collingswood, New Jersey, filed an answer and stated, among other things, that it was presently in the process of liquidation and therefore powerless to act in a banking or trust capacity except for the purpose of liquidation. Thereupon the plaintiff moved for a summary judgment upon affidavits filed and testimony taken in open court. In the light of the consent of the defendants to proceed in this matter, it will be considered as if the same were submitted on final hearing. The facts in connection herewith are as follows:
On Saturday, March 1, 1952, Ernest W. Clark, then being ill and confined to his home, executed two instruments, (1) an inter vivos trust agreement, and (2) a last will and testament. The order in which reference to these instruments is made is not to be deemed a conclusion as to the sequence of their execution. The inter vivos trust agreement, which was not executed as required for the execution of a will, created a charitable trust, giving broad powers to the named trustee in the management and conduct of the investments in said trust, and provided in addition, in part, as follows:
"Witnesseth that: Whereas the Donor has this day deposited with the Trustee certain monies, property, securities, investments *73 and/or other assets, as set forth and enumerated in Schedule "A" annexed hereto and hereby made a part hereof, in trust nevertheless for the uses and purposes, and under and subject to the terms and provisions hereinafter set forth; which trust the Trustee is willing to accept and assume; and the said parties desire to herein and hereby express and set forth and define the nature and terms of said trust:
(a) The Trustee shall pay the entire net income derived from the trust estate during the Donor's lifetime to the Donor, or in accordance with such written instructions or directions as may be given by the Donor to the Trustee, from time to time, with respect thereto; and the Trustee shall further pay and/or deliver to the Donor, from time to time, in addition to the said payments of income, such monies or other assets from the principal of the trust estate as the Donor may request, or as the Trustee may deem necessary for the support, maintenance, comfort or welfare of the Donor.
(b) From and after the Donor's death the Trustee shall pay the entire net income derived from the trust estate unto the wife of the Donor, Dorothea J. Clark, if she shall survive him, in convenient installments, for and during the term of her natural life, or until her remarriage; and her receipt for any sum or sums so paid to her shall be a complete and sufficient discharge of the Trustee in such regard.
(c) Upon the death or remarriage of the Donor's said wife, or if she should predecease the Donor then upon the Donor's death, the trust estate, or so much thereof as remains, whether principal or accumulated income, shall be held and retained, in trust, by the Trustee, in perpetuity, and shall be known and designated as the CLARK MEMORIAL FUND in memory and honor of the father and mother of the Donor, Ernest W. Clark and Lula B. Clark, his wife, both late of Belhaven, North Carolina, and the net income therefrom shall be paid and/or applied to further the education of such worthy and needy graduates of the Belhaven High School, of Belhaven, North Carolina, as may be selected in the manner hereinafter set forth."
SCHEDULE `A'. Securities deposited by Donor with the Trustee under the foregoing agreement: 100 shares, Camden Fire Insurance Association."
The said last will and testament provided, as far as here pertinent, as follows:
"* * * all of my residuary estate, I give, devise and bequeath unto the Citizens National Bank of Collingswood, New Jersey, and to its successor or successors, IN TRUST NEVERTHELESS for the uses and purposes, and under and subject to the terms and provisions of a certain agreement of trust entered into between the said Citizens National Bank and myself, and bearing even date herewith, including such amendments to and modifications of the same *74 if any, as may hereafter and during my lifetime be made and agreed upon between the parties to said agreement, the property passing under this paragraph to be added to and to become and be a part of the corpus of the trust estate established by said agreement."
There is great uncertainty as to whether the trust agreement or the last will and testament was first signed on March 1, 1952. The state of the proof is such that there is no positive evidence of the order in which said instruments were signed. However, it was proven that the trust agreement and the 100 shares of Camden Fire Insurance Association stock therein referred to were not delivered to the Citizens National Bank of Collingswood, New Jersey, before Monday, March 3, 1952, and that the said Citizens National Bank did not execute the said trust agreement or accept the said trust before Monday, March 3, 1952. The certificate of stock of the Camden Fire Insurance Association remained in the safe deposit box of the said Ernest W. Clark, and under his sole and exclusive control, until shortly before delivery to the Citizens National Bank, coincidental with the delivery of the trust agreement.
Ernest W. Clark died on April 24, 1953, and his above referred to will was admitted to probate by the Camden County Surrogate on June 29, 1953.
The question which the plaintiff now seeks to have determined is whether the residue passed at the death of the testator to the Citizens National Bank, or whether the testator died intestate as to such residue. Plaintiff argues that the said Ernest W. Clark died intestate as to said residue.
Basically, the question with which the court is confronted is whether the trust agreement and its terms were incorporated in the last will and testament of the deceased by reference, or whether under the facts here present it could be concluded that the terms of said trust agreement had such independent significance that the residue must pass to and be distributed by the trustee named in said trust agreement in accordance with the terms thereof.
The expression "incorporation by reference" to which allusion is here made, signifies that a will duly executed and witnessed *75 may incorporate into itself by appropriate reference, intent and identification, an existing written paper or document, whether or not executed as a will or signed by the testator or any other person, and whether or not it has any validity in itself, to the end and with the effect of making it a part of such will. It is unsettled whether this doctrine has been accepted in New Jersey, although the Court, in Murray v. Lewis, 94 N.J. Eq. 681 (Ch. 1923), rejected the recognition of this doctrine.
The following cases have sustained the validity, however, of a testamentary gift to individuals or trustees named in a separate instrument existing at the time of the execution of the will there involved: Swetland v. Swetland, 100 N.J. Eq. 196 (Ch. 1926), affirmed 102 N.J. Eq. 294 (E. & A. 1928); First-Mechanics National Bank of Trenton v. Norris, 134 N.J. Eq. 229 (Ch. 1943); Bottomley v. Bottomley, 134 N.J. Eq. 279 (Ch. 1944). See also Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927).
The following cases have held that a testamentary gift was invalid where reference was made to a written instrument insufficiently identified, or where the instructions were not contained in a writing executed with the formalities required of a will, or in existence at the time of the execution of said will: Magnus v. Magnus, 80 N.J. Eq. 346 (Ch. 1912); Condit v. Reynolds, 66 N.J.L. 242 (E. & A. 1901); Hackensack Trust Co. v. Hackensack Hospital Association, 120 N.J. Eq. 14 (Ch. 1936); Smith v. Smith, 54 N.J. Eq. 1 (Ch. 1895), affirmed 55 N.J. Eq. 821 (E. & A. 1896); Hartwell v. Martin, 71 N.J. Eq. 157 (Ch. 1906).
There is a division between the acceptance and rejection of this doctrine in the other States of the Union. The theory upon which such incorporation is not permitted is that the instrument itself, which purports to make a testamentary disposition of the estate of the deceased, was not executed with the formality required for the execution of a will and that it is, therefore, subject to as much possible fraud as would be a will not so executed in accordance with the statutory requirements. There is a distinction between a *76 gift to an existing trust and a provision incorporating the terms of a trust into a will. There is more than a technical difference between these two situations. In the former instance, the acts giving rise to such a gift are performed for some non-testamentary reason, prior to and frequently unconnected with the will, and so satisfy the underlying principle of the Wills Act. In the latter, they would seem to be an attempt to avoid the formalities required under the Wills Act, and hence subject to fraud and fraudulent imposition.
Even in those states in which such incorporation is permitted, it is a necessary ingredient, inter alia, that the instrument should be in existence at the time of the execution of the will and that the will should refer to it as an existing instrument. If this were not the rule, a testator could, by executing a will and incorporating therein a document to be executed in the future, create for himself a power to dispose of his property by an instrument not executed in accordance with the statute of wills, and open the door to fraudulent imposition. The will itself must refer to such paper to be incorporated, as being in existence at the time of the execution of the will, in such a way as reasonably to identify such paper, and in such a way as to show testator's intention to incorporate such instrument in his will and make it a part thereof. 1 Scott on Trusts (1939), sec. 54.1, p. 290 (1939); 1 Page on Wills, sec. 250, p. 498 (1941).
It is argued by the plaintiff that the theory of incorporation by reference is here inapplicable in the light of the fact that (1) the proof does not demonstrate that the trust indenture was executed by the creator prior to the execution of the will; (2) the trustee of the inter vivos trust did not accept as such until at least two days after the execution of the will, and the trust did not, therefore, exist on the date that the will was signed; (3) no part of the corpus of the trust was delivered to the trustee until at least two days after the execution of the will, and the trust did not, therefore, exist on the date that the will was signed; and (4) in any event, if a valid trust could be deemed to have existed *77 at the time of the execution of the will, it was revoked by the withdrawal by the creator of the corpus thereof prior to his death.
Insofar as plaintiff's first argument is concerned, I cannot, from the proofs, conclusively determine which of the two instruments here involved was first signed on March 1, 1952. It was the burden of the plaintiff to prove that the will was first signed, in view of her contention to that effect. As a general rule, the law does not take cognizance of fractions of a day, but this fiction will be ignored, and the law will take cognizance of the actual hour or time of the occurrence of an event or the performance of an act where the exact hour of such occurrence or performance is important in the fixing of relative rights and in the interest of doing justice. Where such occurrence or performance is required to be done in a certain order, it is presumed that the prescribed order has been followed, and the burden of proving otherwise is cast upon the person asserting the contrary. This the plaintiff has failed to do. Hoppock's Executors v. Ramsey, 28 N.J. Eq. 413 (Ch. 1877; Gallagher v. True American Pub. Co., 75 N.J. Eq. 171 (Ch. 1909); Ambrose v. Metropolitan Life Insurance Co., 18 N.J. Misc. 42 (Sup. Ct. 1939), 86 C.J.S., Time, § 16, p. 900.
Insofar as plaintiff's second argument is concerned, it is recognized that generally a trust, and especially a charitable trust, may be created without notice to or acceptance by the trustee, since equity will not allow a trust to fail for want of a trustee. Where a settlor has made a sufficient delivery of the subject matter of the trust or of a deed of transfer, the trust is validly created at the time of the conveyance, even though the person named as trustee has no notice thereof, or after notice, disclaim. In either such a contingency the trust does not fail, nor is it destroyed, but the title to the property reverts in the settlor, subject to the terms of the trust. 1 Scott on Trusts, (1939), sec. 35, *78 p. 212; Restatement of the Law, Trusts, sec. 35, p. 113; 89 C.J.S., Trusts, § 60, p. 831; Hooton v. Neeld, 12 N.J. 396 (1953).
Standing alone, the failure of the trustee to accept on March 1, 1952 was insufficient to cause a failure of the trust.
It is to be noted, however, that the creator did not deliver the subject matter of the trust prior to March 3, 1952. This failure to deliver is adverted to in plaintiff's third argument. Normally, a trust does not come into existence until the subject matter thereof, if capable of delivery, is delivered to a trustee. There must be an unequivocal act clearly showing that a trust was intended.
"It is of the essence of an express trust that the settlor make a present and unequivocal disposition of the subject property and divest himself of his interest therein." Bendix v. Hudson County National Bank, 142 N.J. Eq. 487 (E. & A. 1948).
Where the owner of property manifests an intention to transfer it in the future to another person in trust, no trust arises until he subsequently makes the transfer. See also 1 Scott on Trusts, (1939), sec. 32, p. 198 et seq.; 89 C.J.S., Trusts, § 63, p. 837; In re Farrell's Estate, 110 N.J. Eq. 260 (Prerog. 1932); DeMott v. National Bank of New Jersey, 118 N.J. Eq. 396 (Ch. 1935); Howard Savings Institution v. Baronych, 8 N.J. Super. 599 (Ch. 1950).
In the present case, it is patent that at any time prior to March 3, 1952 the creator could have destroyed the trust document and refused to deliver the stock certificate, and that no trust would have arisen. Since the trustee did not accept the trust until March 3, 1952 and the subject matter thereof was not delivered to him until that date, it is here held that no trust was in existence at the time of the execution of the will.
It is unnecessary to here conclude whether the doctrine of incorporation by reference has been adopted or rejected in New Jersey, since in any event one of the essential *79 elements is lacking, i.e., the existence of a valid trust on the date of the execution of the will.
In the light of the foregoing, it is unnecessary to determine plaintiff's fourth contention, i.e., whether the trust was revoked during testator's lifetime.
It therefore becomes necessary to determine whether the inter vivos trust agreement may be resorted to upon the theory of "independent significance." Unfortunately, the doctrines of incorporation by reference and independent significance are not too clearly distinguished in many cases, and are frequently confused. Such consequence is perhaps a reasonably anticipated result of their very nature since, as stated in In re Fowles' Will, 222 N.Y. 222, 118 N.E. 611, 613 (Ct. App. 1918), they "run into each other by almost imperceptible gradations." Basically, this doctrine of independent significance concerns itself with whether one may look to a non-testamentary instrument in order to add significance to the terms of a will, and not whether such instrument constitutes the will of the testator. Under this theory the testator may make some extraneous act instrumental in determining the recipients or subjects of the disposition. The sole and primary purpose of such an act is other than the control of the disposition under the will, though that may be an effect resulting from the act. The test is whether the facts have a primary significance apart from the disposition of the property bequeathed. In In re Rausch's Will, 258 N.Y. 327, 179 N.E. 755, 757, 80 A.L.R. 98 (Ct. App. 1932), Justice Cardozo stated:
"We exclude the will that remits us to other words of promise, the expression of a plan or purpose inchoate and imperfect."
The distinction drawn between those two doctrines has been stated to be "documents expressing the terms of the bequest and documents identifying the thing intended to be bequeathed." Thus, a bequest to "heirs" or "children" of a named person, or to "persons who are in my employ," or of property as "money in banks," require a resort to *80 extrinsic evidence for the ascertainment of the identity of the person or property to which reference is made and are valid.
On the other hand, the disposition is invalid where the facts from which it is to be ascertained have no independent significance; thus a disposition in favor of such persons as may be named in an unattested memorandum, or such property as may be designated in such a memorandum, is invalid, since the designation in the memorandum has no significance apart from the disposition of the property by the will. 1 Scott on Trusts, sec. 54.2, p. 292; In re Fowles' Will, 222 N.Y. 222, 118 N.E. 611 (Ct. App. 1918); In re Rausch's Will, 258 N.Y. 327, 179 N.E. 755, 80 A.L.R. 98 (Ct. App. 1932); Clapp, Wills and Administration (in 5 N.J. Practice (1950)), sec. 48, p. 121.
In the matter sub judice resort is sought to the inter vivos trust in order to ascertain the disposition of the property, the terms of the bequest. The testator attempted to dispose of his residue by a non-testamentary instrument. Such a gift is invalid, as the trust agreement has no independent significance, as above defined.
It follows that since the gift of the residue is invalid, it passes as if the testator had died intestate. Smith v. Smith, 54 N.J. Eq. 1 (Ch. 1895), affirmed 55 N.J. Eq. 821 (E. & A. 1896); Hyde's Executors v. Hyde, 64 N.J. Eq. 6 (Ch. 1902); Mills v. Montclair Trust Co., 139 N.J. Eq. 56 (Ch. 1946).
Judgment will be entered in accordance with the foregoing.