## In the Matter of the Estate of HARRY V. KELLY, Deceased.

Surrogate's Court, Kings County, April 25, 1934.

*Henry C. Turner*, referee.

*Cullen & Dykman* [*Lyman Sessen* of counsel], for the executrix.

*Rogers & Whitaker*, for Dr. Leo J. Kelly, claimant.

*Walter F. O'Malley*, special guardian.

*Henry Patent*, for Frieda Schwaber, assignee of legatee.

WINGATE, S. On this application to confirm the report of a referee, the sole issue of moment is as to whether an alleged creditor of the estate whose claim matured more than six years prior to the death of the decedent and thus falls within the disability of section 48 of the Civil Practice Act, has succeeded in bringing himself within the exception of section 59 by showing a written acknowledgment of the debt or has successfully demonstrated a partial payment by the debtor on account thereof.

The claimant unquestionably made a loan of $5,500 to the decedent on or about November 13, 1925. His claim in the present proceeding is in the alternative; for either $5,500 or $3,000, his position as stated in person at the opening of the hearing being: " I claim the difference in the sum of $5,500 not of $3,000. In the event that the trust account of Leo J. Kelly as listed in the objections is proved later to be Leo J. Kelly, Jr., I am willing to forfeit the difference of $2,500 to the estate."

A proof of claim, verified by the claimant on June 22, 1933, alleges a written admission of the indebtedness by the decedent in the sum of $5,500 on November 30, 1929, and further reads in part: " That * * * no part of the said sum of $5,500.00 has been repaid to the claimant. * * * The said sum of $5,000 is not and was never secured in any way, and said sum is now due and payable to the claimant herein."

The claimant by his contentions on the trial has sought to bring himself within both of the recognized exceptions to the statutory inhibition against the bringing of an action on a legal claim which matured more than six years previously. His first position was that a writing purporting to have been signed by the decedent on November 30, 1929, came within the terms of section 59 of the Civil Practice Act; his second was that the act of the decedent in opening a savings bank trust account in his own name in trust for Leo J. Kelly or Leo J. Kelly, Jr., in usual Totten form, amounted to a *pro tanto* payment of the debt.

The purpose of section 59 of the Civil Practice Act and the proper attitude of the courts in respect to its provisions, are clearly indicated by the language of Judge, now Chief Judge, POUND, writing for the unanimous court in an allied connection, in *Matter of City of New York (Elm Street)* (239 N. Y. 220, 225): " A remedial right arising from the non-performance of a duty is extinguished when the Statute of Limitations deprives the right of its judicial

remedy. \* \* \* The statute is one of repose. The court may not pervert its purpose in order to avert an unjust result."

In attempted substantiation of the first contention of the claimant there was introduced in evidence a paper bearing the date of November 30, 1929, on which was written in decedent's handwriting: " To whom it may concern. I owe to my brother Dr. Leo J. Kelly the sum of $5,500. Harry V. Kelly." This was found by the executrix about a month after decedent's death in his private files, and had apparently not been exhibited by him to any person during his lifetime; in any event, the claimant knew nothing of it.

Under such circumstances, the court fully concurs in the conclusion of the referee that whereas the form of the acknowledgment of the debt was sufficient to toll the running of the Statute of Limitations under section 59 of the Civil Practice Act, the failure to communicate its contents to the creditor or to any person acting on his behalf, destroyed its value for the purpose of extending the period within which the claim was capable of legal enforcement. (*Wakeman* v. *Sherman*, 9 N. Y. 85, 91; *De Freest* v. *Warner*, 98 id. 217, 221; *Matter of Kendrick*, 107 id. 104, 109; *Matter of Kissick*, 170 N. Y. Supp. 636, 638, not otherwise reported.) It had no greater effect upon the rights of the creditor than would have been accomplished by a mental resolution of the debtor to make payment in spite of the intervention of the statutory bar.

Turning to the second contention, that the running of the statute had been tolled by a payment by the decedent on account of the obligation, it is observable at the outset that any such position is glaringly inconsistent with his affidavit verified on June 22, 1933, and with his statement on the trial, both of which have been noted. On each occasion he stated that his legal rights called for a recovery of the full sum of $5,500 which inferentially negatives his belief that any payment on account had been made. Indeed, his expressed willingness " to *forfeit* " the sum of $2,500 if the validity of the savings bank account were upheld as for the benefit of his son, connotes not a payment on account of the debt by its erection, but a waiver of rights of the creditor in consideration thereof.

The circumstances attending the opening of the account will now be reviewed.

The decedent was the president of the Nassau Savings and Loan Association. In or about the winter of 1931 the decedent himself opened in his own institution a savings account in his own name " in trust " for Leo J. Kelly. It appeared that the bank book was issued in this name while the signature card named Leo J. Kelly, Jr., as the beneficiary. It was a new type of account with this particular institution, and this was the first one of its kind

opened. The sum deposited was $2,500. The evidence on the hearing clearly demonstrated that the intended beneficiary of this savings bank trust was Leo J. Kelly, Jr., the son of the claimant. Nothing tending to show that the trust became absolute during testator's lifetime was demonstrated.

Certain testimony was adduced from a niece and a sister of the claimant respecting statements of the decedent regarding the account, but these purported to report nothing more than declarations of an intention to pay the debt to the claimant, of the opening of the trust account for the son of the latter, and that the decedent hoped by this means to be able to make repayment.

There is not a shred of evidence in the record connecting the claimant with this transaction except that he learned of the opening of the account about ten days after the event (from whom does not appear), and that the executrix surrendered the bank book to him, presumably in his capacity as natural guardian for the named beneficiary, subsequent to testator's death. It is on this insecure and sketchy foundation, alone, on which the claimant seeks to erect his structure of recovery.

One of the basic principles of the Roman law was " *Ut itaque solutio fieri possit, necessario requiritur, ut utriusque tam præstantis, quam accipientis voluntas concurrat.*" (Burge Suretyship [1847], p. 145 *et seq.*) This rule was early incorporated in the common law and has received uniform adherence not only in this but in all other Anglo-Saxon jurisdictions.

An early statement of this principle in this State is found in *Kingston Bank* v. *Gay* (19 Barb. 459) in which the court says (at p. 460): " To constitute a payment, money or some other valuable thing must be delivered by the debtor to the creditor, for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose."

This rule in similar words or substance is repeated in *Sokoloff* v. *Nat. City Bank of N. Y.* (130 Misc. 66, 78; affd., 223 App. Div. 754; affd., 250 N. Y. 69); *Parsons* v. *Gardner* (122 App. Div. 167, 170) and many other cases.

The basic requirements for a valid payment are nowhere expressed more clearly than in the language of the Supreme Court of the State of Missouri in *Thompson* v. *Kellogg* (23 Mo. 281, 285) as follows: " of course, in order to constitute the transaction a payment, there must be both a delivery by the debtor and an acceptance by the creditor, with the purpose on the part of the former to part from, and of the latter to accept of, the immediate ownership of the thing passed from one to the other. In a payment, we ordinarily look only to the act of the party making it; but yet

its legal import is an act in which the debtor *tenders* and the creditor *accepts* that which is offered."

It is obvious, therefore, that a valid payment presupposes the co-existence of at least three indispensable elements: *First,* a delivery of the subject-matter by the debtor; *second,* an acceptance thereof by the creditor; and *third,* an immediate change of ownership of the medium of payment.

Where the payment is made direct to the creditor in legal tender, acceptance will ordinarily be presumed in the absence of a demonstration to the contrary, since in the usual case a complete or partial solution of the debt will be to the advantage of the creditor. This, however, is not the case where the attempted payment is made to or for the benefit of a third party, and where such delivery is not expressly authorized by the creditor, payment will not be effected thereby (*Matter of Kissick,* 170 N. Y. Supp. 636, 640; *Ravid* v. *Karo,* 121 id. 272, 273, both not otherwise reported; *Machauer* v. *Fogel,* 20 Misc. 666, 667; affd., 21 id. 637), even though such attempted payment is by a deposit in a bank in the name of and to the credit of the creditor. (*Clemons* v. *Livingston County Mut. Fire Ins. Co.,* 12 N. Y. Supp. 433, 434; reported by memorandum only, 59 Hun, 615.)

An attempted payment by delivery to another would in reality savor both of a novation and of an accord and satisfaction, in both of which the demonstration of an agreement between the debtor and the creditor for the performance of the particular act is a *sine qua non* to validity. (*Inman* v. *Burt Co.,* 124 App. Div. 73, 75; affd., 195 N. Y. 558; *Rogers* v. *Thompson,* 215 App. Div. 541, 544; *Reilly* v. *Barrett,* 220 N. Y. 170, 172; *Patten* v. *Lynett,* 133 App. Div. 746, 749.) In the present case no such agreement was attempted to be shown and presumably never existed since the claimant's testimony demonstrates that he did not learn of the opening of the trust account until some time after the act was consummated.

The defect in performance of the acts requisite to a payment, however, goes much deeper, since by reason of the nature of the account neither a delivery of the subject-matter of the account by the decedent nor any change of possession of its avails took place. The characteristics of a savings bank trust, popularly known as a " Totten trust," are too familiar to require present repetition. Suffice it to note that nothing passes to the tentative beneficiary by the opening of such an account and the *jus disponendi* of the avails remains as completely in the depositor during his lifetime as if the account stood solely in his own name. (*Matter of Totten,* 179 N. Y. 112, 125; *Matter of Richardson,* 134 Misc. 174, 177; *Matter*

of Kive, 139 id. 273, 276; Matter of Vaughan, 145 id. 332, 334; Matter of Reich, 146 id. 616, 620; Matter of Rasmussen, 147 id. 564, 565, 566; Matter of Timko, 150 id. 701, 704.) It follows that the act of the decedent in this connection possessed none of the essential characteristics of a payment and that the contention of the claimant that a tolling of the Statute of Limitations was thereby effected cannot be sustained.

The testimony of the claimant that he " accepted " the deposit, adduced over the objection of the special guardian, was clearly inadmissible both as a conclusion of the witness and as falling within the prohibition of section 347 of the Civil Practice Act.

A final word is appropriate in respect to the action of the court in directing that additional parties be brought into the proceeding before the referee. It was, as noted, one of the main contentions of the claimant that the testator had made a part payment on account of the debt by opening the Totten trust account for his son, Leo J. Kelly, Jr. The bank book showed the beneficiary as Leo J. Kelly. It was developed on the hearing that there were two individuals by this name as well as claimant's son, Leo J. Kelly, Jr. If the person intended by the decedent was either of the first two, the contention of the claimant must inevitably fall of its own weight. For the purpose of determining this issue, the court directed that all of the three Leo J. Kellys should be made parties to the proceeding and this was done over the objection of the claimant as guardian for the infant, Leo J. Kelly, Jr., that this court had no jurisdiction to determine the ownership of the account. As a strict matter of fact, the question which required the joinder of all of the possible beneficiaries of the account was not that of present ownership of the account, but of the identity of the person intended by the testator at the time of its inception. In the interest of fairness, it was only proper that all possible claimants thereto should be afforded an opportunity of being heard on the subject. Whereas, therefore, it may have been true in one aspect that such jurisdiction was lacking, since in any event the account was not an asset of the decedent's estate, from another point of view, such determination was essential, since in its absence the validity of the demand of the claimant was impossible of adjudication, as it was an essential step in the decision of whether any act had been performed by the testator which could conceivably have effected a tolling of the statute.

The only other objection to the confirmation of the reports of the referee is that of Frieda Schwaber. This possesses no conceivable merit; wherefore, the reports are confirmed in their entirety.

Proceed accordingly.