In the Matter of the Petition of FREDERICK S. PETERSEN, Executor of the Estate of GEORGE W. RICHARDSON, Deceased, for the Discovery of Property Withheld.

Surrogate's Court, Kings County, April 3, 1929.

*William H. K. Davey*, for the petitioner.

*Sproull, Harmer & Sproull*, for the respondent.

WINGATE, S. George W. Richardson died on the 9th day of April, 1927. Beginning in or about the month of June, 1923, the decedent had from time to time opened accounts with three different savings banks, such accounts in each instance being opened under the title of " George W. Richardson, in trust for Frances E. O'Connor." The moneys used in opening the accounts and all moneys subsequently deposited therein were the sole property of the testator, who withdrew various sums from the accounts from time to time and used them for his own purposes.

After testator's death, Mrs. O'Connor drew out the total balances, which aggregated $2,182.91, and claimed sole ownership of the money.

It appears from the testimony that the testator was, for approximately twenty years, an employee and friend of Mrs. O'Connor and that these accounts were opened while such employment was still in existence; that he first met the executor and his wife, who is the sole beneficiary under the will, in 1923, and in 1924 went to live with them and boarded with them continuously up to the time of his death in 1927.

Mrs. O'Connor was not produced as a witness, but her daughter took the stand and testified concerning a visit which she and her mother made to the testator in the " Spring of 1926," at which time the trust accounts were first mentioned in her presence. Among other testimony, the following appears:

" He said: ' You don't want me to spend all this money, do you?' And mother said: ' I want you to spend as much as you need to make yourself comfortable.' He took the three bank books from his pocket and I saw them, and he said to my mother: ' You want these, don't you? ' And she said: ' Yes,' and he held them out to her and she said: ' Yes, I do when you are finished with them but I want you to be comfortable with the money you have as long as you live.' And he said: ' Good ' and he put them back in his pocket."

The executor introduced the testimony of a Mr. Freund, an attorney, who testified, subject to the objection of the respondent, on which the court reserved its ruling, that on or about April 6, 1927, he was called to the residence of the Petersens, where the testator then resided, and that testator said to him that he wished him to prepare a will and that he desired it drawn at once in longhand. The testimony then proceeds: " * * * I asked him

what he intended to have me write, and I also asked him what his estate consisted of and he said: ' The only thing I have at the present time, Mr. Freund, are three personal bank accounts' * * * and I asked him: ' Have you anything else, Mr. Richardson? ' He said: ' Nothing but just some clothes. My whole estate consists of just three bank accounts,' and in order to further substantiate, I said: ' Where are those bank accounts, Mr. Richardson? ' And he mentioned the Montauk Bank, the City Savings Bank and the Dime Savings. I again questioned him: ' Are you quite sure you have not anything else? ' And he said no."

This testimony was largely substantiated by that of Mrs. Goodwin, the other subscribing witness to the will, and by Mr. Petersen, the executor named in the will. Their testimony was also received by the court subject to respondent's objection.

This will, which was admitted to probate in this court on February 20, 1929, reads, exclusive of preamble and in *testimonium* clauses, as follows:

" *First*. That all my just debts and funeral expenses be paid.

" *Second*. I bequeath my entire estate, which consists of personal property, to Julia B. Petersen, residing in Brooklyn, N. Y.

" *Third*. I hereby appoint Frederick S. Petersen as executor of the estate, revoking all wills heretofore made."

It further appears that the testator died three days after the execution of the will and that the only estate aside from these savings bank accounts, if they be held to be a part of the estate, consisted of some used clothing and a few items of furniture of slight value.

On these facts three possible questions are presented:

*First*. Did the transactions testified to by Miss O'Connor transform the tentative trusts of the savings bank accounts into irrevocable trusts?

If this question be determined in the negative, the further question arises:

*Second*. Did the execution and subsequent probate of the will effect a revocation of the tentative trusts?

And, finally, if this also is answered in the negative, the final question must be determined:

*Third*. Did the acts of the testator at the time of the execution of the will constitute such " decisive act or declaration of disaffirmance " as would effect a revocation of the tentative trusts?

The modern doctrine respecting voluntary or " savings bank trusts," like those involved in the present proceeding, is laid down in *Matter of Totten* (179 N. Y. 112). The court, after an elaborate

review of previous decisions, announced the following rules as governing such trusts (p. 125): "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

While the aim of the Court of Appeals by this decision was expressly stated to be the solution of the various conflicting views which had previously found judicial expression, an examination of the subsequent decisions discloses that the courts have experienced almost as much difficulty in determining the nature of the " unequivocal act " needed to finally establish the trust and the " decisive act " required to permanently abrogate it, as they previously had in determining the general results arising from these trusts.

In a determination of the question first above propounded, it will be of advantage to consider a few of the adjudications on the subject.

In the case of *Matter of Rudolph* (92 Misc. 347) it appeared that the decedent had actually delivered the bank book to the beneficiary and that it thereafter remained in her possession. It was held that this act made the trust an irrevocable one.

In *Stockert* v. *Dry Dock Savings Institution* (155 App. Div. 123) the testatrix opened two accounts in her own name in trust for her niece and delivered the books to the latter. They remained in the niece's possession until shortly prior to the death of the aunt, when they were mailed to the aunt at her request, but never reached her. She specifically bequeathed the money to others. It was held that the delivery to the niece had made the trusts irrevocable and that consequently the niece was entitled to the money, in spite of their specific bequest.

In *Hessen* v. *McKinley* (155 App. Div. 496) an uncle opened an account in trust for his niece, showed her the book and told her and others on several occasions that it was hers and that she should have it on attaining her majority. It was held that no irrevocable trust had been established and that he could not be held liable on a suit by the niece for withdrawing the money.

In *Matthews* v. *Brooklyn Savings Bank* (208 N. Y. 508) it was

held that notification to the beneficiary and occasional deposit of the book with her for safekeeping did not make the trust an irrevocable one.

In *Hemmerich* v. *Union Dime Savings Institution* (205 N. Y. 366), which is frequently cited as an authority on this subject, an action was brought by a daughter, who had been named as the beneficiary in a savings bank trust by her father, against the bank, to recover the amount of the deposit, on the theory that his acts had been such as to change the trust into an unconditional gift. The facts shown were that the father had opened an account of $1,000 in his name in trust for the daughter, had made repeated statements to her and others that the money was for her and had delivered the book to her, but had subsequently recovered possession of it, and withdrawn the money. The court held that this proof fell short of that which would be requisite to permit a recovery against the bank, but intimated that an action in equity might lie against the trustee to determine whether an irrevocable trust had been created.

It is apparent from the result in the *Matthews* case that the law requires something more than mere notification to the beneficiary in order to transform the tentative trust into an irrevocable one, since in that case the Court of Appeals determined that such notice, even when coupled with tentative possession of the indicia of ownership, namely, the bank book, did not suffice. In view of this decision, it is believed that the only theory on which the apparently conflicting decisions can be reconciled is by construing the language of the *Totten* case, above quoted, " some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary " to mean " some unequivocal act  *  *  *  such as delivery of the pass book *and* notice to the beneficiary." In other words, that it was the intention of the Court of Appeals, as evidenced in the *Matthews* case, to hold that such trust remained tentative unless and until the person opening it did such acts as would substantially amount to a gift *inter vivos* of the account.

The facts in the instant case fall far short of any such showing and are, indeed, less persuasive of an intention to surrender domination over the account than were the facts in the *Matthews* case.

The court is, therefore, constrained to answer the question first above propounded in the negative and to rule that the transactions between testator and Mrs. O'Connor, as shown by the testimony, did not change the status of these accounts from tentative trusts into irrevocable ones.

This brings us to a consideration of the effect on these tentative trusts of the will of the testator which was executed three days

prior to his death. Since such will has been duly admitted to probate without objection, no question is here presented as to the validity of the testamentary act.

On this phase of the case, also, the decisions are in some apparent confusion and a review of some of them will prove of advantage.

In the case of *Walsh* v. *Emigrant Industrial Savings Bank* (106 Misc. 628; affd., 192 App. Div. 908; affd., 233 N. Y. 512) testatrix had opened three savings bank accounts in her name in trust. Shortly prior to her decease she called in an attorney to draw her will. " At the time she held three savings bank books in her hand and said that they represented deposits of a little over $5,000 and then proceeded to bequeath her estate upon that basis." In holding that such act revoked the tentative trusts created by the opening of the savings bank accounts, the court said: " Here the decedent went to the trouble and expense of making a will, and in order to carry out the provisions thereof it is essential to include in the assets of the estate the $3,000 in the disputed bank account. On the facts and circumstances presented I am constrained to hold that the decedent by her acts deprived the plaintiff of any interest in the account herein and that judgment must be directed in favor of the executor."

It will be noted that this decision at Special Term was made in March, 1919, and that affirmance, both in the Appellate Division and in the Court of Appeals, was on this opinion, the latter being dated February 28, 1922.

*Matter of Beagan* (112 Misc. 292) presented similar facts in that at the time of making her will testatrix sent for the bank book showing the account in question and as each legatee was named and the amount of the specific gift was determined she would subtract the sum from the balance and then provide for other specific legacies to make up, in the aggregate, the total of the account. The court expressly notes: " It was further shown that the decedent had no property other than the bank account in question out of which such legacies could have been satisfied." All of this evidence appears to have been admitted without objection. The court thereupon held that the tentative trust was revoked and awarded the account to the estate.

In *Wait* v. *Society for Political Study of New York City* (68 Misc. 245), decided by Judge GIEGERICH sitting at Special Term in New York county, decedent had opened a number of voluntary trust accounts in which various *cestuis que trustent* were named. By her will she made specific bequests of a number of these trust accounts to their specified *cestuis que trustent* but failed in any way

to refer to certain other similar accounts. The will contained a general residuary clause. The court held that the *cestuis que trustent* of all of the bank accounts, both those specifically bequeathed and those not mentioned, were entitled to the balances in the accounts, and that those named took as *cestuis que trustent* under the trusts and not as legatees under the will.

The facts in the final case to be noted (*Meehan* v. *Emigrant Industrial Savings Bank*, 213 App. Div. 807) must be gathered from the dissenting opinion of CLARKE, P. J., as no opinion was rendered by the majority of the court, which merely affirmed the judgment of the court below. It is shown by this opinion of the presiding justice that decedent opened a voluntary trust account for her niece, all moneys deposited in the account belonged to testator, the bank book remained continuously in her possession, and the niece never knew of it until some time after the death of testatrix. The amount on balance was listed by decedent on a slip of paper with other accounts standing solely in her name, as a part of her possessions. The will of testatrix, by paragraph 2d, left a specific legacy of $1,000 to the niece, the 3d paragraph being a residuary clause reading: " All the rest, residue and remainder of my estate, of every kind and description and wheresoever situate, I give, devise and bequeath to my son Joseph F. Meehan absolutely."

The Supreme Court judgment which was here affirmed awarded the trust bank account to the niece. This determination was, in turn, affirmed by the Court of Appeals without opinion (241 N. Y. 564), such final affirmance being dated November 24, 1925.

Can these apparently conflicting determinations be reconciled? It will be noted on analysis of the facts of these cases that in the *Walsh* and *Beagan* cases the tentative trusts were held to be revoked where the wills contained specific legacies which would have failed had the trusts been sustained, and in the *Wait* and *Meehan* cases the trusts were held to be effective as against general or residuary clauses in the respective wills. This distinction will reconcile the two apparently conflicting affirmances in the *Walsh* and *Meehan* cases, in neither of which was an opinion rendered by the Court of Appeals. As will be hereinafter noted, it is possible that the cases may also be reconciled on another theory.

In any event, it seems to be established by controlling authority that a mere general or residuary bequest, in the absence of any further feature, will not effect a revocation of the tentative trusts.

The final question for consideration relates to the testimony of Mr. Freund, the draftsman of the will of Mr. Richardson, and of Mr. Petersen, respecting the acts and declarations of the testator on the evening of the 6th of April, 1927. This testimony was

received subject to the objection of the respondent. If it is to be considered as having been offered for the purpose of establishing an alteration or enlargement of the terms of the will, it was clearly inadmissible since the will on its face was unambiguous. (*Matter of Lummis*, 101 Misc. 258; *Bradhurst* v. *Field*, 135 N. Y. 564; *Dwight* v. *Fancher*, 245 N. Y. 71, affg. 217 App. Div. 377.) But it was not offered or received for that purpose. The issue in this proceeding was whether or not the trusts had been revoked. The manner of such revocation was not specified. If the testator at any time prior to his death or by his last will revoked the trusts, his executor was entitled to receive the moneys standing in the accounts at the time of his death. The respondent apparently considered that such revocation could only be effected by the will, in which aspect, as stated, the testimony would have been inadmissible. There is, however, the further possibility that the actions and declarations of Mr. Richardson on the evening of April sixth constituted such a " decisive act or declaration of disaffirmance " within the language of the *Totten* case as to effect such revocation. The testimony of these three witnesses was clearly admissible on this issue, and since such acts and declarations are singularly identical on the facts with those presented in the *Walsh* case, in which the Court of Appeals upheld a judgment of the revocation of the trusts, such decision is controlling on this court on the facts here presented, and the executor must be held entitled to recover the amounts of these bank accounts from Mrs. O'Connor, on the ground that the conduct and declarations of Mr. Richardson on the evening of April 6, 1927, in the presence of Mr. Freund, Mrs. Goodwin and Mr. Petersen, amounted to decisive acts and declarations of disaffirmance within the language of *Matter of Totten (supra)*.

The testimony of the witnesses Somerville and Mrs. Pratt was objected to on the ground that it was incompetent. It was taken subject to this objection, ruling on the objection being reserved. This testimony is not closely enough connected to the transaction of revocation to be admissible, and the objection of the respondent is, therefore, sustained and the testimony is stricken from the record. It has not been considered in the result which has been reached.

Submit order, on notice, accordingly.