JULIA CONRY, PLAINTIFF-RESPONDENT, v. "MARY" MA-
LONEY, THE FIRST NAME BEING FICTITIOUS, ALSO
KNOWN AS MRS. MICHAEL J. MALONEY, DEFENDANT-
APPELLANT.

Argued November 6, 1950—Decided December 4, 1950.

Mr. *Ernest Fasano* argued the the cause for appellant (*Messrs. Quinn, Doremus, McCue & Russell,* attorneys).

Mr. *Theodore D. Parsons* argued the cause for respondent (*Messrs. Parsons, Labrecque, Canzona & Combs,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. Michael J. Maloney, uncle of the plaintiff and husband of the defendant, died on October 31, 1948, a resident of Monmouth County. In August, 1944, he had established three savings accounts in three New York City banks in his own name "in trust for Julia Conry" or "in trust for Julia Conry, niece." In June, 1945, he opened a fourth account in a fourth New York bank, in his own name and again "in trust for Julia Conry."

All four of the bank books were turned over to Julia Conry by the decedent, apparently for safekeeping. In May, 1946, and again sometime in September, 1947, the plaintiff delivered the books to her uncle, at his request, and each time he returned them to her, the second time saying: "This is for you. You can do with it what you want to, and if anybody gets them away from you it is your own fault."

On September 29, 1947, the decedent opened two more savings accounts, both in his own name, one being in trust for Michael J. Maloney, a nephew, and the other in trust for Julia Jacobson, another niece.

Four days before Michael Maloney died, he asked the plaintiff to inquire about the procedure necessary to transfer all this money to the bank in Red Bank where he kept his per-

sonal checking account. Pursuant to his request, she made the inquiry and, acting upon instructions received at the bank, delivered to him the following day the six bank books together with withdrawal slips to be used in effecting the transfer.

During the ensuing three days before his death, Michael Maloney had at hand the bank books and withdrawal slips. He did not, however, sign the slips or take any other affirmative step toward withdrawing the money in the trust accounts. After his death, his widow, the defendant here, delivered to his nephew and his other niece, Julia Jacobson, the pass books for the accounts in which they were named as beneficiaries. She refused, however, to deliver to the plaintiff the pass books for the four accounts in which she was so named.

The widow remained adamant in her refusal for about eleven months and the plaintiff then filed a complaint in the Chancery Division, Monmouth County, demanding that the four bank books be surrendered to her. The court below found in her favor, holding the trusts created by the establishment of the accounts, while revocable during the decedent's lifetime, had not in fact been revoked by him.

An appeal was taken to the Superior Court, Appellate Division, and certified here on our own motion. The defendant urges reversal on the ground that the trusts were, as found below, revocable and that they were actually revoked by the decedent prior to his death.

The evidence relied on consists almost entirely of the defendant's own unsupported testimony. She testified, over objection, that on the morning of the day before her husband's death she, at his request, handed him the six bank books and the withdrawal slips, whereupon he said:

"I want you to go up Monday morning and draw all of this money out. I will sign the slips and you go up and draw it out. I want it put in my checking account in the Second National Bank in Red Bank."

She further told of a new disposition of the funds which he contemplated and said the same matters were discussed between them again that afternoon and the following morning.

On this testimony the defendant seeks to predicate a revocation of the trusts created by the decedent.

The validity of a trust of choses in action created by a settlement or other transaction *inter vivos* is determined by the law of the place where the transaction took place. *Cutts v. Najdrowski,* 123 *N. J. Eq.* 481 (*E. & A.* 1938). Recognizing the principle here enunciated, the parties agreed the issues should be disposed of according to the law of the State of New York, where the bank accounts were located.

It was likewise conceded that the New York law was determined by *In re Totten,* 179 *N. Y.* 112 (*Ct. of App.* 1904), where the appellate court, adjudicating a similar controversy involving a revocable trust, said:

"A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

The propriety of the widow's testifying as to declarations made by her husband, in the absence of the beneficiary, regarding the trust accounts, becomes wholly immaterial and we do not pass upon it, for even conceding its admissibility and credibility, the record before us is devoid of a "decisive act or declaration of disaffirmance."

On each of the three occasions when the decedent discussed the accounts with the defendant, he had the bank books and the withdrawal slips available. Nevertheless the slips were never signed. Giving full weight to the widow's story, the fact remains he took no positive step indicating a changed decision even though he had the means at hand to do so. His discussion of the matter with her on three separate occasions in the course of two days without taking any affirmative action strongly suggests he had not yet made a final

determination to revoke or alter the status of the challenged trust accounts.

A clear and definite intention to create the trusts was manifest by the surrounding circumstances and the manner in which the accounts were opened.

The words attributed to the decedent, unsupported by any action on his part effectuating the intention expressed, do not constitute a convincing and unequivocal disaffirmance or revocation of the trusts as required by the established rule.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.