86 N.J. Super. 107 (1965)
206 A.2d 171
IN THE MATTER OF THE ESTATE OF JOSEPH DAMATO, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1964.
Decided January 5, 1965.
*108 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
*109 Mr. Ralph W. Chandless argued the cause for appellant James Damato, Executor (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Samuel Saffron argued the cause for respondent Philip Damato (Messrs. Werksman, Saffron & Cohen, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
This is an appeal from a judgment of the Probate Division awarding the balances in two out-of-state bank accounts to decedent's son Philip Damato.
The facts are not in dispute. Decedent died on November 6, 1960, a resident of Paterson, New Jersey. Although he had been engaged in the wastepaper business in the Paterson area for many years, he also had business interests in Florida, including the operation of a small stable of race horses. His will was admitted to probate by the Surrogate of Passaic County, his son James Damato qualifying as the executor thereof. On July 26, 1962 the executor filed a verified complaint praying, inter alia, for instructions as to the disposition of the balances remaining in two savings accounts in the Bank of Hollywood, Hollywood, Florida, which are the subject of the present controversy.
The first account, #9503, had been opened by the decedent on February 7, 1957 in the name of Joseph Damato in trust for Philip Damato. At the time of decedent's death a balance of $11,165.84 remained therein. On September 24, 1957 decedent opened a second account, #11141, also in his name in trust for Philip Damato. In this account, the balance at the time of his death was $5,684.26.
The first account was opened with a deposit of $7000, all but $201.66 of which had been transferred from the decedent's business account in the First National Bank of Passaic County, Paterson, New Jersey. Additional deposits totalling $3000, with interest payments, brought the balance up to $10,139.91 on September 24, 1957. The second account was started on the latter date with a $10,000 deposit transferred *110 from decedent's "Racing Account" in the Hollywood bank. On January 19, 1959, $5000 of this was withdrawn by the decedent and used for his own purposes. Thereafter there was no activity in either account beyond the accumulation of interest.
Both Philip and James Damato were sons of the decedent. Philip worked for his father in the Paterson business and never knew of the accounts until after the death of his father. The passbooks for both accounts remained in decedent's possession and were found among his papers in Florida.
In awarding the balance in each account to Philip, the trial judge held that the transactions were governed by the law of Florida, their situs, and since Florida had adopted the rule of In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711 (Ct. App. 1904), they were effective to pass the balance in each account to Philip upon the death of the decedent.
The appellant contends that the trial judge erroneously took judicial notice of the law of Florida, notwithstanding the failure of the respondent to comply with the provisions of N.J.S. 2A:82-27, and that, having done so, he erroneously applied the substantive law of Florida rather than its conflict of laws.
N.J.S. 2A:82-27 provides that:
"Whenever the common or statute law of any other State or country is pleaded, or notice thereof given to the court and each adverse party at or before the pretrial conference, or at least 10 days before a trial when there is no pretrial conference, or within such other time as the court may fix by order, in an action in any court of this State, the court shall take judicial notice thereof. In the absence of such pleading or notice, it shall be presumed that the common law of such State is the same as the common law as interpreted by the courts of this State."
The statute in question had its origin in the Uniform Judicial Notice of Foreign Law Act and has been construed to be a remedial statute whose language is to be given a liberal interpretation. Franzen v. Equitable Life, etc., Society, 130 N.J.L. 457 (Sup. Ct. 1943); M.N. Axinn Co. v. Gibraltar Development, Inc., 45 N.J. Super. 523 (App. Div. 1957).
*111 Respondent does not dispute the failure to plead or give formal notice of reliance upon the law of Florida. He urges, however, that the spirit of the statute has been complied with since appellant was on notice that the law of Florida was being relied upon to pass title to him as the beneficiary claiming to be entitled to the balance in the two accounts.
The executor's verified complaint for instructions was the only pleading filed in the cause, although the rules required the filing of an answer, an answering affidavit, or a motion, unless the action was to proceed ex parte. R.R. 4:85-4. The trial judge proceeded to dispose of the case on the allegations of the complaint, although counsel for Philip and for his sister appeared and argued the respective claims of their clients. It could well be said that the executor should have pleaded the law of Florida and raised the question of its applicability to the transaction in issue. When he failed to do so, it would have been the better practice for the respondent to have filed an answer complying with N.J.S. 2A:82-27. However, we are satisfied that the omission worked no surprise or prejudice to the appellant. The executor was on notice, through briefs and otherwise, that Florida law was being relied upon by counsel and considered by the court. His attorneys asked for and were granted leave to submit a supplemental brief as to the law of Florida. Our attention is not called to any objection to the court's consideration or application of the law of Florida. With certain exceptions not here relevant, appellant should not be permitted to raise a point here which was not raised below. Domestic Fuel Co. v. American Petroleum Corp., 6 N.J. 538, 542-543 (1951); Clark v. Wichman, 72 N.J. Super. 486, 493 (App. Div. 1962).
However, aside from procedural considerations, we are satisfied that the trial judge properly took judicial notice of the law of Florida and determined that it, rather than the common law of New Jersey, was applicable. The underlying philosophy of the Uniform Judicial Notice of Foreign Law Act is substantial justice. Colozzi v. Bevko, Inc., 17 N.J. 194, 204 (1955). The rules of procedure should be flexible *112 enough to allow for correction of inadvertent omissions, and should be keyed to effect but one result  the administration of substantive justice as it would be administered in the foreign court. Id., citing Note, 37 Cornell L.Q. 748, 756 (1952). See also Leary v. Gledhill, 8 N.J. 260 (1951). In the context of the case, the trial judge was not precluded from ascertaining the law of Florida, notwithstanding failure to plead it formally. Colozzi v. Bevko, Inc., supra, at p. 203; N.J.S. 2A:82-28; cf. M.N. Axinn Co. v. Gibraltar Development, Inc., supra, at p. 535; Fitzgerald v. Fitzgerald, 66 N.J. Super. 277, 281 (Ch. Div. 1961).
The law is well settled that the creation of an inter vivos trust in money or securities, as distinguished from a testamentary trust, is governed by the law of the situs of the money or securities. 2 Beale, Conflict of Laws, § 294.3, p. 1019 (1935); Cutts v. Najdrowski, 123 N.J. Eq. 481, 483, (E. & A. 1937); Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007 (Ct. App. 1933); Restatement, Conflict of Laws, § 294, subsec. (1), p. 376 (1934). The validity of an inter vivos trust of choses in action is determined by the law of the place where the transaction takes place. Cutts, supra, at p. 483; Hooton v. Neeld, 12 N.J. 396, 407 (1953); Restatement, supra, § 294, subsec. (2).
The savings bank trust doctrine which the trial judge found to be dispositive of the issue before him was set forth in its present form in In re Totten, supra, to the effect that:
"A deposit by one person of his own money in his own name and as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust is created as to the balance on hand at the death of the depositor."
*113 See Restatement 2d, Trusts, § 58, p. 155 (1959); 1 Scott on Trusts (2d ed. 1956), § 58.3, p. 489; 1 Bogert, Trusts and Trustees, § 47, p. 306 (1951).
In Cutts v. Najdrowski, supra, the court held that where a New Jersey resident opened an account in a New York savings bank in his name in trust for another, since the transaction was effective there, it was effective here to pass title to the balance in the account at the depositor's death, to the other person named, under the Totten trust doctrine. It was so held notwithstanding that such a transaction, had it been consummated here by a New Jersey resident, would have been invalid to pass title as violative of our statute of wills or as an ineffective gift inter vivos. Nicklas v. Parker, 69 N.J. Eq. 743 (Ch. 1905), affirmed 71 N.J. Eq. 777 (E. & A. 1907); Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408 (Ch. 1936); Travers v. Reid, 119 N.J. Eq. 416 (Ch. 1936); Bendix v. Hudson County National Bank, 142 N.J. Eq. 487 (E. & A. 1948). Since then, however, N.J.S.A. 17:9A-216 has been held effective to pass valid title to the balance, at death, in such an account, to the beneficiary named. Howard Savings Inst. v. Kielb, 38 N.J. 186 (1962). Cutts was followed in Conry v. Maloney, 5 N.J. 590 (1950), where a New York savings account was again involved and, through application of the law of the situs, it was held that the cestui, a niece, took the balance in an account opened by the decedent "in trust for" her, to the exclusion of the decedent's widow.
The trial judge, following Cutts and Conry, held that the law of Florida applied. Concluding that the Totten trust doctrine had been adopted in Florida, he found that title to the bank balances passed to respondent. In so doing, he applied the substantive law of Florida as found in Seymour v. Seymour, 85 So.2d 726 (Fla. Sup. Ct. 1956). There the court held, referring to the Totten trust doctrine:
"This well-known common-law doctrine has been adopted in many jurisdictions. See Annotations, 38 A.L.R.2d 1244, Sec. 1, and 91 A.L.R. 105; 7 Am. Jur., Sec. 438, pp. 309-310, and Restatement *114 of Trusts, Sec. 58. We accept it without hesitation. Thus in the present case even if there were no statute the prevailing common-law doctrine would, upon the showing made here, require the money on deposit to be paid to the beneficiary, Felton Seymour." (Emphasis added)
Appellant urges that in thus applying Florida substantive law, instead of Florida conflict of laws, the trial judge fell into error. Specifically, it is argued that in Seymour the court was passing upon the validity, as a trust, of an account established by a domiciliary of Florida in a Florida bank, whereas we are here concerned with an account opened in Florida by a domiciliary of New Jersey. Under Florida conflicts law, the argument continues, the doctrine of mobilia sequuntur personam would be applied. Henderson v. Usher, 118 Fla. 688, 160 So. 9 (Sup. Ct. 1935); Hanson v. Denckla, 100 So.2d 378 (Fla. Sup. Ct. 1956), reversed on grounds of lack of jurisdiction in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Turning, then, to the law of decedent's domicile, New Jersey, appellant invokes Swetland v. Swetland, 105 N.J. Eq. 608 (Ch. 1930), affirmed 107 N.J. Eq. 504 (E. & A. 1931), as holding the transaction to be ineffective as a trust of the accounts in question. Appellant thus seeks to invoke the doctrine of renvoi to defeat respondent's claim. See Gray v. Gray, 87 N.H. 82, 174 A. 508, 94 A.L.R. 1404 (Sup. Ct. 1934); Green v. Robertshaw-Fulton Controls Co., 29 F.R.D. 490, 500 (D.C. Ind. 1962).
Neither the industry of counsel nor the court's own research has yielded a New Jersey case passing directly upon the point raised. In neither Cutts nor Conry does it appear that any attempt was made to set up the distinction now urged. In Cutts, however, we note the following passage referable to Swetland v. Swetland:
"The Court of Chancery, in supposed reliance upon the case of Swetland v. Swetland, 105 N.J. Eq. 608; affirmed, 107 N.J. Eq. 504, erroneously held that the transfer of the New York bank account was controlled by the law of this state and was invalid since it failed to comply with the statute of wills of this state. In the Swetland Case anything which may have been said respecting the law controlling the *115 creation of a trust inter vivos in money or securities was not necessary to the decision and must, therefore, be disregarded if contrary to the generally accepted principles of law." 123 N.J. Eq., at p. 482 (emphasis added)
We note, too, that it was upon Swetland v. Swetland that the Florida court leaned most heavily in Henderson v. Usher, supra, where Swetland was described as "one of the leading cases in this country on the question." However, we find it unnecessary to determine the Florida conflicts rule which would be applicable in view of the conclusions which follow.
We are satisfied that the trial judge correctly ruled that the substantive law of Florida should be applied to the transaction in question. In neither Cutts nor Conry did our courts proceed any further than to apply the internal law of the place where the transaction took place. The transaction rule was also followed in Hooton v. Neeld, supra. In the Restatement, Conflict of Laws, § 7, p. 11 (1934), the rule as to conflicts is set forth as follows:
"Except as stated in § 8 [concerning matters involving title to land and the validity of divorce decrees], when there is a difference in the Conflict of Laws of two states whose laws are involved in a problem, the rule of Conflict of Laws of the forum is applied;
(a) in all cases where as a preliminary to determining the choice of law it is necessary to determine the quality and character of legal ideas, these are determined by the forum according to its law;
(b) where in making the choice of law to govern a certain situation the law of another state is to be applied, since the only Conflict of Laws used in the determination of the case is the Conflict of Laws of the forum, the foreign law to be applied is the law applicable to the matter in hand and not the Conflict of Laws of the foreign state."
In comment (d) to subsection (b) the learned authors note that, under the rule stated, the court of the forum, in a matter involving a contract, applies only the contract law of the other state, and this "may result in a decision contrary to that which would be reached by a court in that state, the law of which is being applied, by reason of the fact that a different Conflict of Laws rule prevails in the latter state."
*116 The rule set forth in the Restatement seems grounded in reason for, if appelalnt's view were to be upheld, the courts would be faced with a possible unending circuity. Thus, if the Florida conflicts rule would refer the matter back to New Jersey, New Jersey, applying its full body of law, including its conflict rules, would again refer to the law of Florida because of the holdings in Cutts, Conry and Hooton. The circular process would then begin anew and continue ad infinitum. Such was the problem posed in In re Tallmadge, 109 Misc. 696, 181 N.Y.S. 336 (Surr. Ct. 1919), where application of the renvoi doctrine was denied on account of its inconsistency with common law theory of the conflict of laws, its fundamental unsoundness and the chaos which would result from its application to conflicts arising between the laws of the several states. (181 N.Y.S., at p. 348)
Accordingly, we hold that where, in a proceeding in this State, the validity of a transaction in a foreign state  except one involving title to land or the validity of a divorce, as to which we make no determination  is, by virtue of our conflict of laws principles, made to depend upon the laws of such state, the foreign law to be applied is the law applicable to the matter in hand and not the conflict of laws of the foreign state. Restatement, Conflict of Laws, supra, § 7(b); see Hobbs v. Firestone Tire & Rubber Co., 195 F. Supp. 56 (D.C., N.D. Ind. 1961); Haumschild v. Continental Casualty Co., 7 Wis.2d 130, 95 N.W.2d 814, 820 (Sup. Ct. 1959).
The judgment is accordingly affirmed.