In the Matter of the **ESTATE OF Henrietta A. BOL, Deceased.**

**No. 16073.**

Supreme Court of South Dakota.

Considered on Briefs May 26, 1988.

Decided Sept. 21, 1988.

Dennis Maloney and Michael T. Hogan of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for appellant.

Ronald C. Aho and Scott K. Bradshaw of Aho & Bradshaw, Brookings, for appellee.

MILLER, Justice.

In this case of first impression, we address the issue of whether a subsequent will revokes a prior tentative ("Totten")[1] trust.

## FACTS

Decedent Henrietta A. Bol (Henrietta), established a passbook savings account in 1976 and purchased three 30–month money market certificates in 1980, 1981 and 1982 at the Brookings (South Dakota) Savings & Loan Association. These deposits were all issued in the name of "Henrietta A. Bol, Trustee for Margaret Tompkins" (Henrietta's sister).

On August 11, 1983, Henrietta executed her last will and testament. This will directed that all of her debts and funeral expenses and expenses of last illness and administration of her estate be paid from the estate. It further provided that after payment of said expenses and debts:

> ... I give, devise and bequeath *all of my estate and property*, real, personal or mixed, and wheresoever situated, and *over which I have the power to make testamentary disposition*, to my brother, ARNOLD F. deBLONK, and my sister, MARGARET E. TOMPKINS, *share and share alike* ... (Emphasis added.)

In the will she also specifically disinherited three other brothers "because I feel the need of my brother ARNOLD and my sister MARGARET [is] greater than those of my said [disinherited] brothers or any members of their respective families."

Henrietta's will made no specific reference to the savings account or money market certificates that she previously had created in her name as trustee for her sister Margaret.

Henrietta died on May 23, 1985. At the time of her death, the trust deposits had a

---

1. The tentative or Totten trust was originally recognized in *In re Totten*, 179 N.Y. 112, 124–126, 71 N.E. 748, 752 (1904), wherein the court held:

> A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, recoverable at will, un-til the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.

total value exceeding $52,000. Her other property included joint tenancy bank accounts with Margaret valued at over $2,400, a joint tenancy checking account with Arnold of approximately $314, two automobiles in joint tenancy with Arnold having a total value of $300, household furnishings valued at $3,000, and a balance due on a real estate deed of trust covering land in Idaho worth approximately $10,700. The costs of administration of the estate and expenses of her last illness exceeded $9,300.

Margaret, as executrix, petitioned for summary administration of the estate on July 1, 1985. The usual proceedings were followed, pursuant to SDCL 30-11-1 *et seq.*, and subsequently the court entered findings of fact, conclusions of law and a decree of distribution.

Arnold later moved to set aside the decree of distribution, arguing that Henrietta's last will had revoked the trust deposits and claiming that the passbook savings account and money market certificates should have been included as estate assets.

The trial court found that the deposits were, in fact, valid, tentative trusts. It further found that Henrietta's will had revoked such trusts.

## ISSUE

WHETHER THE PROVISIONS OF DECEDENT'S LAST WILL AND TESTAMENT REVOKED THE TENTATIVE TRUSTS.

## DECISION

■ We must first observe that the validity of the trust arrangement is not properly before us. The trial court specifically held that a valid tentative, or Totten, trust had been created by Henrietta when she established the bank account and purchased the money market certificates. Although the validity of the trust was addressed in the briefs submitted by counsel, Arnold filed no notice of review which would allow us to consider the court's ruling. SDCL 15-26A-22. Therefore, assuming, as we must, that a valid Totten trust was established, we will proceed to deter-

mine whether that trust was revoked by Henrietta's subsequent will.

Courts, in interpreting wills, are required to construe them according to the intention of the testator. SDCL 29-5-1. The words of a will are to receive an interpretation which will give to every expression some effect, rather than an interpretation which renders any of the expressions inoperative. SDCL 29-5-9. *Rowett v. McFarland*, 394 N.W.2d 298 (S.D.1986); *Estate of Bock*, 85 S.D. 113, 177 N.W.2d 734 (1970). In examining Henrietta's will in light of the mandates of SDCL 29-5-1 and -9, we affirm the trial court's ruling that the will revoked the tentative trusts created by Henrietta.

■ Generally, a tentative trust may be revoked by (1) the depositor withdrawing the deposit, (2) the depositor's unequivocal act or declaration of disaffirmance, (3) the beneficiary predeceasing the depositor, (4) the terms of the will of the depositor, and (5) by facts and circumstances resulting in the inadequacy of the estate assets to satisfy the testamentary gifts, funeral and administrative expenses, taxes, and other charges. *See generally* Annot., *Revocation of Tentative ("Totten") Trust of Savings Bank Account by Inter Vivos Declaration or Will*, 46 A.L.R.3d 487 (1972), and Scott, *The Law of Trusts*, § 58.4 (3d ed. 1967).

As stated in Restatement (Second) *Trusts* § 58 Comment (c) (1959), "[a] tentative trust ... can be revoked by the depositor at any time during his lifetime, by a manifestation of his intention to revoke the trust. No particular formalities are necessary to manifest such an intention." *See also* Annot., 46 A.L.R.3d at 493, wherein it is stated that

[v]irtually all courts adopting the ... doctrine adhere to this liberal policy and recognize that a Totten trust is effectively revoked where some declaration of depositor, regardless of form, and regardless of whether made inter vivos or in a will, sufficiently expresses or implies the existence of a revocatory intent.

■ Initially, we agree with the majority of jurisdictions holding that a residuary

clause in a will, standing alone, is insufficient to impliedly revoke the tentative trust. *Brucks v. Home Fed. S & L Assn.*, 36 Cal.2d 845, 228 P.2d 545 (1951); *Re Estate of Basch*, 41 Misc.2d 773, 246 N.Y.S. 2d 244 (1964); *Re Greniewich's Will*, 243 App.Div. 811, 278 N.Y.S. 279 (1935); *Re Richardson's Estate*, 134 Misc. 174, 235 N.Y.S. 747 (1929); *Re Pozzuto's Estate*, 124 Pa.Super. 93, 188 A. 209 (1936); Annot., 46 A.L.R.3d 509–10 (1972).

■ Further, we agree with the majority of courts which hold, in cases where the trust was not specifically revoked, that we must resort to a consideration of surrounding circumstances in order to determine whether the true intention of the depositor was to revoke the Totten trust. *See, e.g., Conry v. Maloney*, 5 N.J. 590, 76 A.2d 899 (1950); *Re Estate of Krycun*, 24 N.Y.2d 710, 301 N.Y.S.2d 970, 249 N.E.2d 753 (1969); *Re Phipps' Will*, 125 N.Y.S.2d 606 (1953); *Nace v. Fulton Co. Nat. Bank*, 79 Pa. D. & C. 325 (1951); Annot., 46 A.L.R.3d 493–97 (1972).

In order to determine whether the depositor intended to revoke the tentative trust, courts have considered the following factors: (1) whether subsequent to the alleged revocation (e.g., through a later will), the depositor continued to treat the deposits consistent with the trust (e.g., by maintaining the account in trust form, by activity or inactivity of the account, etc.); (2) retention of possession of the account passbook or certificates; and (3) whether, absent the Totten trust, sufficient assets exist in the estate to effectuate the specific dispositions provided in the will, including directions for the payment of costs and expenses. *See Conry, supra; Krycun, supra; Nace, supra; Re Beck's Estate*, 173 Misc. 733, 19 N.Y.S.2d 83, *aff'd mem.*, 260 App.Div. 651, 23 N.Y.S.2d 525 (1940); *Re Schiffer's Estate*, 142 Misc. 518, 254 N.Y.S. 871 (1931); 46 A.L.R.3d 493–97 (1972).

We observe, as did the trial court in its findings, that the money market certifi-

cates were never cashed or altered, but rather were automatically renewed for a like period at maturity, and there was no evidence offered as to any withdrawals or deposits from the passbook savings account. We further observe that the evidence does not clearly show whether Margaret was notified of the existence of the accounts or whether she had possession of any of the certificates or the account passbook during Henrietta's lifetime. Moreover, Henrietta's will specifically bequeathed her property equally, "share and share alike" to Arnold and Margaret, while disinheriting three other brothers because of Arnold and Margaret's greater need. Finally, we note that if the trusts were not recognized as revoked by the will, Margaret would receive approximately eight and one-half times more of the estate property than Arnold, who would receive merely a negligible distribution of the estate, and that the estate's available liquid assets would be insufficient to pay the debts and costs of administration and expenses of Henrietta's last illness.

The trial court, considering all of the foregoing, concluded that Henrietta's will, read in its entirety and especially considering the lack of liquidity of her estate absent the trust property, evinced her intent to revoke the Totten trust over the deposits.

Although we are not bound by the trial court's interpretation of the will nor by its conclusions of law, *Diamond Intern. Corp. v. Glad*, 330 N.W.2d 526 (S.D.1983); *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980), we agree with its analysis and holding. When considering and applying all of the appropriate factors, together with the specific language of the will, it is clear that to hold to the contrary would contravene the true intention of Henrietta.[2]

For all of the foregoing reasons, we agree with the trial court and affirm in all respects.

---

**2.** Margaret argues that the language in the will wherein Henrietta devises her estate "over which I have the power to make testamentary disposition," negates any intent to revoke the trust. We perceive that to be mere "boiler plate" language which, standing alone, is in no manner dispositive.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs with writing.

SABERS, J., dissents.

HENDERSON, Justice (concurring).

In concurring, I wish to express that Henrietta A. Bol, deceased, executed a written instrument and subscribed same, directing a transfer of her assets for equal distribution under a Last Will and Testament. She created a trust in money market certificates (these are different than joint savings accounts, quite obviously). She created a credit, unto herself, in the bank by having this language imprinted: "HENRIETTA A. BOL, Trustee for MARGARET TOMPKINS." Henrietta A. Bol, decedent, as depositor, named herself as trustee of specific property and communicated that intent to a bank officer, clearly identifying the beneficiary, thus establishing a trust. When Henrietta A. Bol, decedent, wrote her Last Will and Testament excluding three siblings, and designating her brother and her sister (Tompkins) as sharing equally, her acts came within the purview of executing a *written instrument* changing the trust. SDCL 55–1–14 provides: "An interest in an existing trust can be transferred only by operation of law or by a *written instrument* subscribed by the person making the transfer or by his agent." (Emphasis added.)

SABERS, Justice (dissenting).

I have no trouble with the rule that trusts can be revoked by the terms of a will, as long as the intention to revoke is clear and satisfactory. In this case, however, any intention to revoke the trusts was neither clear nor satisfactory.

Tentative trusts may be revoked in the will of the depositor creating such trusts. Annotation, *Revocation of Tentative ("Totten") Trust of Savings Bank Account by Inter Vivos Declaration or Will*, 46 A.L.R. 3d 487, 493 (1972); *Restatement (Second) of Trusts* § 58 comment c (1959). Since there was no decisive act or declaration of revocation of the trusts created by the decedent during her lifetime, a presumption arises that an absolute trust was created as to each trust. Annotation, 46 A.L.R.3d 487. "This presumption may be overcome, however, if the will of the depositor manifests a *clear intention* to revoke the trust." (emphasis in original). *In re Dougherty's Estate*, 62 Misc.2d 348, 352, 309 N.Y.S.2d 1, 6 (Sur.Ct.1970).

The majority's holding that the language contained in paragraph 2 of the will impliedly revokes the trusts because the decedent left her estate to be divided equally to Arnold and Margaret has disastrous implications. Under this reasoning, any tentative trust created prior to the execution of a will would nearly always be declared revoked if someone other than the beneficiary of the trust was to share in the decedent's estate. It is tantamount to holding that trusts are revoked by a subsequently executed will unless the testator specifically states otherwise in the will. This defeats her intention rather than supporting it.

The majority opinion was overly impressed with the will language "share and share alike." This "share and share alike" language is important as to Henrietta's intention, but it only applies to her probate estate "over which I have the power to make testamentary disposition." This does not apply to the trust property. The trust property passed to the beneficiary upon Henrietta's death and she did not have the power to make testamentary disposition over the trust money.

The majority asserts that this language is "mere 'boiler plate' language which, standing alone, is in no manner dispositive." This assertion is not supported by other authority. In *Old Colony Trust Co. v. Gardner*, 264 Mass. 68, 161 N.E. 801 (1928), the Massachusetts Supreme Court held that

If the words in the residuary clause, "all ... property ... over which I have any power of testamentary disposition," are given their natural meaning, they do not revoke the trusts declared by the testatrix. She had no power of testamentary

disposition over any of the property held in trust until the trusts were revoked. *Id.* at 802.

The majority presumes Henrietta was an unintelligent person who did not know what she was doing. There is no evidence in the record to indicate that Henrietta was anything other than an intelligent person who knew what she was doing. In my view, this was a well-drawn will by an intelligent person and even the "boiler plate" language has meaning.

Over the years Henrietta established numerous joint and trust checking, savings, and other accounts. On March 3, 1976, she established savings account #4194 in the name of Henrietta A. Bol, Trustee for Margaret Tompkins. On October 30, 1980, she established a thirty-month money market certificate #28121.2 in the original sum of $6,000 at a rate of 12% interest. On October 5, 1981, she established a thirty-month money market certificate #49994.2 in the original amount of $22,845.05 at 16% interest. On January 5, 1982, she established another thirty-month money market certificate #55595.2 with an opening balance of $7,000 at 14%. Henrietta must have been pleased with these accounts as she allowed each to grow. Interest was compounded daily on the last three high yielding accounts. All of these last three accounts were in the name of Henrietta A. Bol, Trustee for Margaret Tompkins and contained the following language: "*No additions permitted....* This account is Non Transferable."

Henrietta's will was signed on August 11, 1983. Between that date and her death on May 23, 1985, she earned thousands of dollars in interest on these trust accounts in her name as trustee for Margaret Tompkins. The earnings on the last three money market certificates were distributed quarterly so there would have been numerous distributions. Despite that, Henrietta never took any action to transfer or revoke the trust accounts. In addition, the third money market certificate matured on April 4, 1984, and she allowed it to be automatically renewed in the name of Henrietta A. Bol, Trustee for Margaret Tompkins. The fourth certificate matured on July 4, 1984, and she also allowed it to be automatically renewed in the name of Henrietta A. Bol, Trustee for Margaret Tompkins. In my view, her handling of these accounts demonstrates her intelligence and her intention to maintain, not revoke, these trust accounts. If she did not want her sister, Margaret, to have this money upon her death, all she had to do was to remove Margaret's name therefrom. Likewise, if she wanted Margaret to receive the money in a representative capacity only, all she had to do was to reflect that by saying Margaret Tompkins "as proposed executrix of my estate." She did not do either.

The American Law Reports summarizes a case involving similar facts as follows: [I]n *Nace v. Fulton County Nat. Bank* (1951) 79 Pa D & C 325, ... there being no expression in the will of an intention to revoke the tentative trust existing by reason of the trust form of the certificate of deposit, such an intention could not be implied from the terms of the will. The court reasoned that had the purchaser intended the certificate of deposit to be governed by the terms of the testamentary trust created by her will, she could have easily so provided in the will and could have accomplished the same result by having the certificate renewed in her own name without the trust designation; instead, it was noted, the purchaser continued to have the certificate renewed in trust form even after the allegedly revoking will was executed. Annotation, 46 A.L.R.3d at 532.

If the language of this will is sufficient to revoke these trusts, isn't it also sufficient to revoke:

1. The savings account held jointly with Margaret,
2. The certificate of deposit held jointly with Margaret,
3. Title to the 1968 Ford LTD held jointly with Arnold,
4. Title to the 1967 Volkswagen held jointly with Arnold.

If the language of this will is so strong that it revokes four trusts without refer-

ring to them or naming them in any way, wouldn't it be strong enough to revoke or remove a named beneficiary under a life insurance policy? The majority opinion wholly fails to even consider any of these questions.

The law in South Dakota concerning joint accounts has been stable since *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339 (1968). *Wagner* properly placed the burden of challenging a joint account on the challenger to show *by clear and satisfactory evidence* that there was no intention to create the joint account. I fear that we are reversing *Wagner* by implication. For the purpose of stability, the *Wagner* Rule and its progeny should be extended to trust accounts.

Another reason expressed by the majority for revocation of the trusts is that, "the estate's available liquid assets would be insufficient to pay the debts and costs of administration and expenses of Henrietta's last illness." The majority completely overlooks the fact that pursuant to SDCL 30–22–18 an insolvent estate can sell its property to pay such expenses. The record reveals household furnishings valued at $3,000 which could be sold. In addition, there was a balance due the estate on a real estate deed of trust covering Idaho land worth approximately $10,700. Thus, the estate had assets totalling $13,700, while the costs of administration of the estate and expenses of her last illness were $9,300, or $4,400 less. Finally, if the basis of the rule is that a trust may be revoked for the purpose of paying the estate's bills, the rule should not exceed the reason, and the revocation or withdrawal from the trust should not exceed the amount of the bills. *In re Campbell's Estate,* 140 N.Y. S.2d 863 (Sur.Ct.1955).

In his special writing Justice Henderson purports to support the majority opinion by emphasizing SDCL 55–1–14 which provides: "An interest in an existing trust can be transferred only by operation of law or by a written instrument subscribed by the person making the transfer or by his agent." This statute does not mean that an interest in an existing trust *was* transferred, only

that an interest in an existing trust may be transferred if, and only if, done in accordance with the statute.

I recognize that a will can revoke a trust and that an interest in an existing trust can be transferred by another written instrument. I do not, however, accept the claim that Henrietta A. Bol intended to or revoked the four trusts she established for her sister, since there is no language in the will which clearly and satisfactorily indicates any intention to revoke the trusts she created.